IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | § | | |
| | § | | |
| v. | § | No. | 4:20cR358 |
| | § | | Mazzant |
| NEERAJ JINDAL | § | | |

**INDICTMENT**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

DEC 9 – 2020

BY DEPUTY_____

THE UNITED STATES GRAND JURY CHARGES:

**Count One**

Violation: 15 U.S.C. § 1
(Antitrust Conspiracy: Price Fixing)

Introduction

At all times relevant to this Count:

1.     Home health agencies arrange for home health care workers to provide health care services to patients in their home or assisted living facility.  Home health care can include physical therapy, which is provided by physical therapists ("PTs") and physical therapist assistants ("PTAs") who travel to patients' homes or assisted living facilities to provide care.

2.     Home health agencies often contract with therapist staffing companies to provide PT and PTA services to home health patients.  Therapist staffing companies, in turn, contract with or employ the PTs and PTAs who perform the physical therapy.  The cost of home health care, including physical therapy, is often paid by federal Medicare Program ("Medicare") funds or by private insurers.

3.      Medicare is a federal health care program providing benefits to persons who are over the age of 65 or disabled, and is administered by the United States Department of Health and Human Services through its agency, the Centers for Medicare & Medicaid Services.  Medicare covers eligible home health care services provided by a participating home health agency to Medicare beneficiaries who are confined to their homes and have a medical need for skilled services including, among other things, physical therapy.  Claims for qualifying home health care services are reimbursed to the home health agency based on contract rates determined by Medicare.

4.      Therapist staffing companies compete with each other to contract with or employ PTs and PTAs.  PTs and PTAs may contract with or be employed by multiple therapist staffing companies and choose among them based on pay rate, volume of patient referrals, and location of patients.

5.      Defendant **Neeraj Jindal** ("the **Defendant**"), residing in the Eastern District of Texas, was the owner of a therapist staffing company, Company A.  Company A was a corporation organized and existing under the laws of the State of Texas with its office in the Eastern District of Texas.

6.      Company A contracted with PTs and PTAs to provide in-home physical therapy services to patients located in the Dallas-Fort Worth metropolitan area.  Each PT and PTA who contracted with Company A had set prices (a "rate" or "pay rate") that Company A paid them for providing in-home care visits.  Company A billed home health agencies set prices (the "bill rate") for providing therapy services.  The difference

between the pay rates that Company A paid to its PTs and PTAs and the bill rates that it billed to home health agencies constituted Company A's margin.

7.      Individual 1 was a physical therapist who contracted with Company A and was a clinical director of Company A.  Individual 1 reported to the **Defendant**.

8.      Individual 2 owned Company B, which was a therapist staffing company that provided PT and PTA staffing services in the Dallas-Fort Worth metropolitan area. Company B competed with Company A to contract with PTs and PTAs.

9.      Various commercial entities and individuals, not made defendants in this Count, participated as co-conspirators in the offense charged herein and performed acts and made statements in furtherance thereof.

10.      Whenever in this Indictment reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or other representatives while they were actively engaged in the management, direction, control or transaction of its business or affairs.

Description of the Conspiracy

11.      From in or around March 2017 to in or around August 2017 (the "Relevant Period"), in the Eastern District of Texas and elsewhere, the **Defendant** and co-conspirators knowingly entered into and engaged in a conspiracy to suppress competition by agreeing to fix prices by lowering the pay rates to PTs and PTAs.  The conspiracy engaged in by the **Defendant** and co-conspirators was a *per se* unlawful, and thus

unreasonable, restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

<u>Means and Methods of the Conspiracy</u>

12.     For the purpose of forming and carrying out the charged conspiracy, the **Defendant** and his co-conspirators, among other things, provided and received non-public rates paid to PTs and PTAs; communicated about rate decreases; discussed and agreed to decrease rates paid to PTs and PTAs; implemented rate decreases in accordance with the agreement reached; and paid PTs and PTAs at collusive and noncompetitive rates. For example, the **Defendant** and his co-conspirators did the following:

(a)     The **Defendant** directed Individual 1 to reach out to Individual 2, the owner of a competing therapist staffing company, regarding the rates that Company A and Company B paid their PTs and PTAs. On March 10, 2017, at approximately 1:36 p.m. CST, Individual 1, acting at the direction of and on behalf of the **Defendant**, texted with Individual 2. Individual 1 texted: "Have you considered lowering PTA reimbursement. . . . ." Individual 2's response stated, in part, "the therapists are overpaid." Individual 1 texted: "I think we're going to lower PTA rates to $45." Individual 2 responded by texting: "Yes I agree," "I'll do it with u," "I think the PT's need to go back to 60 . . . . Our margins are disappearing." Individual 1 responded: "[thumbs up emoji] I feel like if we're all on the same page, there won't be a bunch of flip-flopping and industry may stay stable." Individual 1 reported back to the **Defendant** regarding this text message conversation with Individual 2.

(b)     The **Defendant** subsequently texted the owners of other therapist staffing companies to recruit additional competitors to join the collective effort to lower rates.  Specifically, on March 10, 2017, beginning at approximately 3:55 p.m. CST, the **Defendant** separately texted at least four other owners of therapist staffing companies, including Individual 3, the owner of Company C; Individual 4, the owner of Company D; Individual 5, the owner of Company E; and Individual 6, the owner of Company F.  The **Defendant** wrote to each owner, "I am reaching out to my counterparts about lowering PTA pay rates to $45."  The **Defendant** asked each owner, "What are your thoughts if we all collectively do it together?"  The **Defendant** wrote to each owner that he had Company B "on board."  The **Defendant** further texted Individual 3, "I think we all collectively should move together."

(c)     On March 17, 2017, at approximately 3:44 p.m. CDT, Individual 1, acting at the direction of and on behalf of the **Defendant**, texted Individual 2. Individual 1 stated, "FYI we made rate changes effective next payroll Monday decreasing PT's and PTA's."  In response, Individual 2 texted, "Well I can join in where did u go."  Individuals 1 and 2 subsequently exchanged text messages regarding their pay rates for PTs and PTAs.

(d)     Pursuant to the agreement, Company A thereafter paid lower rates to certain PTs and PTAs.

Trade and Commerce

13.     During the Relevant Period, the business activities of the **Defendant** and his co-conspirators that are the subject of the conspiracy charged in this Count were within the flow of, and substantially affected, interstate trade and commerce.  For example, during the Relevant Period:

(a)     Insurance funds, including federal Medicare funds, traveled from banks or companies located in states outside of Texas through a home health agency to Company A in Texas, and from Company A to its PTs and PTAs to pay them for providing care to patients;

(b)     To provide care in patients' homes and assisted living facilities, PTs and PTAs used equipment and vehicles purchased in interstate commerce; and

(c)     The conspiracy was intended to lower rates paid to PTs and PTAs, which would lessen their purchases in interstate trade and commerce.

All in violation of 15 U.S.C. § 1.

## Count Two

> Violation: 18 U.S.C. § 1505
> (Obstruction of Proceedings Before the
> Federal Trade Commission)

At all times relevant to this Count:

14.     Paragraphs 1–8, 10, and 12 of Count One are repeated, realleged, and incorporated in Count Two as if fully set forth in this Count.

15.     Beginning in or around April 2017, and continuing at least through and including September 15, 2017, the Federal Trade Commission ("FTC") was conducting

an investigation, pursuant to its authority under the Federal Trade Commission Act, as amended, 15 U.S.C. §§ 41, et seq. ("FTC Act"), to determine whether Company A or other therapist staffing companies violated Section 5 of the FTC Act, as amended, 15 U.S.C. § 45.

16.     Whenever in this Count reference is made to the FTC, the allegation includes agents, attorneys, commissioners, counsel, directors, employees, investigators, officers, and other officials of the FTC acting in their official capacities.

17.     By on or around April 25, 2017, and continuing at least through and including September 15, 2017 ("the Relevant Investigation Period"), the **Defendant** was aware of the FTC's investigation.

18.     During the Relevant Investigation Period, in the Eastern District of Texas and elsewhere, the **Defendant** corruptly endeavored to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before a department or agency of the United States.  Specifically, the **Defendant** made false and misleading statements to the FTC and withheld and concealed information from the FTC.  For example, among other things, the **Defendant** did the following:

   a.     On or about April 28, 2017, following up on a letter from the FTC requesting information and documents as part of its investigation and a subsequent phone call with the FTC, the **Defendant** sent an email to the FTC.  In the email, the **Defendant** stated falsely and misleadingly that he decided to make "rate cuts to some of [his] therapists based on a collective agreement with [his] office team,"

that he "reached out to these 3 (not sure if all 3) business owners"—referring to Individuals 4, 5, and 6—with the "intent . . . to see what they were doing with all the upcoming changes [with 'government healthcare'] and how they would adjust to the major rate cuts," and that "[n]o letters, emails, or phone calls ever took place on conducting any rate changes together or collectively as a contracting company," and the **Defendant** withheld and concealed that he reached out to Individual 3 in addition to Individuals 4, 5, and 6, and the true intent of his communications to those individuals;

b.      On or about April 28, 2017, following a call with the FTC, the **Defendant** sent an email to the FTC attaching certain documents, including a false and misleading document titled "Potential List of Competition in the Dallas market" in response to the FTC's request to "[i]dentify the name and address of each competitor of [Company A] that provides physical therapy staffing services." The **Defendant** prepared the typed document based on a handwritten list he maintained titled "Competition" that included Company B, Individual 3 and information about Individual 3's Company C, among other therapist staffing companies and their owners, but the **Defendant** omitted Companies B and C and Individual 3 from the typed list he provided to the FTC, and withheld and concealed the handwritten "Competition" list and that Companies B and C and Individual 3 were his competitors;

c.      On or about May 8, 2017, in response to an email from the FTC regarding a voicemail message from the **Defendant**, the **Defendant** sent an email

to the FTC in which he stated falsely and misleadingly, "I will give you any info you need to prove that nothing at all is done collectively with any counterparts," and withheld and concealed information regarding his assertion "that nothing at all is done collectively with any counterparts," including information tending to disprove this assertion;

      d.    On or about September 15, 2017, during an investigational hearing conducted by the FTC, the **Defendant** testified falsely and misleadingly that he had "no idea" why he wrote to competing therapist staffing companies that he had Company B "on board," that he had "no idea" what he meant by Company B being "on board," and that he did not discuss with Individual 1 whether Company B would lower its pay rates, and withheld and concealed the reason why he wrote to competing therapist staffing companies that he had Company B "on board," the meaning of Company B being "on board," and the fact that he discussed with Individual 1 whether Company B would lower its pay rates;

      e.    Also during the FTC's investigational hearing, the **Defendant** testified falsely and misleadingly that the intent of his March 10, 2017, texts to competitors was only to find out what they were paying their therapists, not to lower pay rates collectively, and withheld and concealed the intent of those texts;

      f.    Also during the FTC's investigational hearing, the **Defendant** testified falsely and misleadingly that he never heard from competing therapist staffing companies what their pay rates were, that he did not know any of their pay rates, that he never discussed pay rates with competitors including Individual 3 of

Company C, and that when he texted Individual 4 of Company D on March 10, 2017, he did not already have any information about Company D's pay rates, and withheld and concealed that he heard from competing therapist staffing companies what their pay rates were, that he knew the pay rates of competing therapist staffing companies, that he discussed pay rates with competitors including Individual 3 of Company C, and that when he texted Individual 4 of Company D on March 10, 2017, he had previously obtained information about Company D's pay rates;

g.      Also during the FTC's investigational hearing, the **Defendant** testified falsely and misleadingly that he did not ask Individual 1 to find out from Individual 2 whether Company B would lower PTA rates to $45, and withheld and concealed his direction and knowledge of Individual 1's communications with Individual 2 about lowering PTA rates; and

h.      Also during the FTC's investigational hearing, the **Defendant** testified falsely and misleadingly that he did not ask Individual 1 to contact Individual 2 and inform her about pay rate changes after Company A made those changes, which Individual 1 did on or around March 17, 2017, and that the **Defendant** did not know whether Individual 1 informed Individual 2 about Company A's pay rate changes, and withheld and concealed his direction and knowledge of Individual 1's communications with Individual 2 regarding Company A's pay rate changes.

All in violation of 18 U.S.C. § 1505.

A TRUE BILL

_____
GRAND JURY FOREPERSON

(Remainder of page intentionally left blank)

Dated:

_____
MAKAN DELRAHIM
Assistant Attorney General
Antitrust Division
United States Department of Justice

_____
MICHAEL F. MURRAY
Acting Principal Deputy Assistant
Attorney General
Antitrust Division
United States Department of Justice

_____
RICHARD A. POWERS
Deputy Assistant Attorney General
Antitrust Division
United States Department of Justice

_____
RYAN DANKS
Chief
EMMA M. BURNHAM
Assistant Chief
Washington Criminal I Section
Antitrust Division
United States Department of Justice

_____
MARVIN N. PRICE, JR.
Director of Criminal Enforcement
Antitrust Division
United States Department of Justice

_____
MATTHEW W. LUNDER
JARIEL A. RENDELL
DOHA MEKKI
RACHEL KROLL
Trial Attorneys
Antitrust Division
United States Department of Justice
450 Fifth Street N.W., Suite 11300
Washington, DC 20530

_____
STEPHEN J. COX
United States Attorney
Eastern District of Texas

Indictment – Page 12

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. |
| | § | |
| NEERAJ JINDAL | § | |

## **NOTICE OF PENALTY**

### **Count One**

Violation:          15 U.S.C. § 1
                    (Antitrust Conspiracy: Price Fixing)

Penalty:            Imprisonment for not more than 10 years, a fine not to
                    exceed $1,000,000, or both; and supervised release of
                    not more than three (3) years.

Special Assessment:    $100.00

### **Count Two**

Violation:          18 U.S.C. § 1505
                    (Obstruction of Proceedings Before the Federal Trade
                    Commission)

Penalty:            Imprisonment for not more than 5 years, a fine not to
                    exceed $250,000 (or twice the pecuniary gain to the
                    defendant or loss to the victim), or both; and
                    supervised release of not more than three (3) years.

Special Assessment:    $100.00