IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:20-CR-358 |
| | § | JUDGE MAZZANT |
| NEERAJ JINDAL (1) | § | |
| JOHN RODGERS (2) | § | |
| | § | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
MOTION FOR RULE 17(c) PRE-TRIAL SUBPOENAS *DUCES TECUM***

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................................. 1
ARGUMENT ................................................................................................................................. 2
   A.  The Documents Sought by the Subpoenas Are Either Irrelevant and Inadmissible or, Alternatively, Have Already Been Produced ............................................................... 3
   B.  The Subpoenas Lack the Requisite Specificity .................................................................. 5
CONCLUSION .............................................................................................................................. 7

## TABLE OF AUTHORITIES

**Cases**
*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) ......................................................... 3, 6
*United States v. Arditti*, 955 F.2d 331 (5th Cir. 1992) .................................................................. 3, 6
*United States v. Avalos-Martinez*, 299 F.R.D. 539 (W.D. Tex. 2014) ............................................ 6
*United States v. Bearden*, 423 F.3d 805 (5th Cir. 1970) ................................................................. 6
*United States v. Flom*, 558 F.2d 1179 (5th Cir. 1977) ..................................................................... 5
*United States v. Hernandez*, No. 3:12-cr-0190-L(04), 2012 WL 6213263 (N.D. Tex. Dec. 13, 2012) ............................................................................................................................................ 7
*United States v. Iozia*, 13 F.R.D. 335 (S.D.N.Y. 1952) ................................................................... 6
*United States v. Nixon*, 418 U.S. 683 (1974) .............................................................................. 3, 5
*United States v. Nixon*, 777 F.2d 958 (5th Cir. 1985) ..................................................................... 7
*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ..................................................... 5

**Statutes**
15 U.S.C. § 1 ..................................................................................................................................... 1
18 U.S.C. § 1505 ............................................................................................................................... 1
18 U.S.C. § 371 ................................................................................................................................. 1

**Rules**
Fed. R. Crim. P. 17(c) ............................................................................................................. 1, 3, 6
Fed. R. Evid. 401 .............................................................................................................................. 4
Fed. R. Evid. 403 .............................................................................................................................. 4

The United States opposes the defendants' request to issue pre-trial subpoenas *duces tecum* because the subpoenas do not meet the requirements of Federal Rule of Criminal Procedure 17(c). As the Supreme Court and the Fifth Circuit have held, Rule 17(c) is not a tool for discovery but rather is a means for parties to obtain evidence for trial. The touchstones for analyzing the validity of a Rule 17(c) subpoena are: (1) whether it seeks relevant evidence, (2) whether it seeks admissible evidence, and (3) whether it contains a sufficient level of specificity. The defendants' proposed subpoenas fail on all three counts, and the Court should deny their motion.

## BACKGROUND

The First Superseding Indictment (the "Indictment") charges Defendants Neeraj Jindal and John Rodgers with: (1) conspiring to fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count One); (2) conspiring to commit multiple offenses against the United States in violation of 18 U.S.C. § 371 (Count Two); and (3) obstructing proceedings before the Federal Trade Commission in violation of 18 U.S.C. § 1505 (Counts Three and Four) (Dkt. #21). The basis for Count One is that Defendant Jindal, owner of a therapist staffing company referred to in the Indictment as Company A, and Defendant Rodgers, one of Company A's clinical directors, "agree[d]" with "the owner of competitor Company B" "to fix prices by lowering the pay rates" to physical therapists ("PTs") and physical therapist assistants ("PTAs") (Dkt. #21 ¶¶ 5, 6, 11, 12). The Indictment charges that "Jindal, Rodgers, and co-conspirators, among other things, . . . discussed and agreed to decrease rates paid to PTs and PTAs; implemented rate decreases in accordance with the agreement reached; and paid PTs and PTAs at collusive and noncompetitive rates" (Dkt. #21 ¶ 12 (emphasis omitted)). In support of that allegation, the Indictment refers to messages exchanged between Defendant Rodgers and Individual 2, the owner of Company B,

that reflect an agreement to lower pay rates (Dkt. #21 ¶¶ 12(a), 12(c)); messages sent by Defendant Jindal to four owners of therapist staffing companies (Company C, Company D, Company E, and Company F) to "recruit additional competitors to join the conspiracy" (Dkt. #21 ¶ 12(b)); and the fact that, "[p]ursuant to the agreement, Company A thereafter paid lower rates to certain PTs and PTAs" (Dkt. #21 ¶ 12(d)). The Indictment does not allege that any company other than Company A lowered pay rates pursuant to the agreement.

On February 22, 2022, counsel for Defendant Jindal contacted the United States and indicated that the defendants intended to file a motion requesting permission to issue subpoenas for pretrial production of therapist pay records and related communications from Company A, Company B, Company C, Company D, Company F, and an entity named Giant Therapy. (The defendants did not seek leave to issue a subpoena to Company E.) During a teleconference on February 24, counsel for the defendants explained to the United States that they were seeking these records to prove that some or all of the entities referenced in the Indictment had not lowered pay rates or to show, by the absence of any relevant communications, that these entities had not implemented the agreement alleged in the Indictment. Because the Indictment does not charge that any company other than Company A lowered pay rates, the United States attempted to avoid an unnecessary dispute over the proposed subpoenas by offering to stipulate that Companies B, C, D, E, and F did not lower pay rates to PTs and PTAs under the agreement alleged in the Indictment. The defendants' counsel stated that, regardless of whether the parties entered into a stipulation, the defendants intended to proceed with their motion.

## ARGUMENT

"Rule 17(c) was not intended to provide an additional means of discovery" beyond the discovery afforded by Rule 16. *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

The rule provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates" and that "[t]he court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Fed. R. Crim. P. 17(c)(1). The Supreme Court and the Fifth Circuit have interpreted this rule to permit subpoenas for "evidentiary materials," *Bowman Dairy*, 341 U.S. at 221; in other words, "[e]very subpoena" under Rule 17(c) "must be a 'good faith effort . . . to obtain evidence,'" *United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) (quoting *Bowman Dairy*, 341 U.S. at 219–20), rather than "a fishing expedition to see what might turn up," *Bowman Dairy*, 341 U.S. at 221. The party seeking to issue a subpoena bears the burden of establishing its propriety and, to do so, "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974). The defendants clear none.

### A. The Documents Sought by the Subpoenas Are Either Irrelevant and Inadmissible or, Alternatively, Have Already Been Produced

The Indictment alleges that the defendants, Individual 2, Company A, and Company B conspired to lower pay rates (Dkt. #21 ¶¶ 12(a), 12(c)). The Indictment also alleges that Defendant Jindal solicited the owners of Companies C, D, E, and F to join the conspiracy (Dkt. #21 ¶ 12(b)). Contrary to the defendants' assertion (Dkt. #60, at 5), however, the Indictment contains no allegations about whether these owners responded to Defendant Jindal's requests, whether they joined the conspiracy, or whether they subsequently lowered PT and PTA pay rates. While the allegations that Defendant Jindal invited these companies to join the conspiracy are relevant to, among other things, the defendants' intent and the existence of the agreement among the conspirators (including Individual 2 and Company B), information about these other entities' pay rates has no bearing on the existence of the alleged conspiracy. Indeed, while the defendants claim that one of the purposes of the subpoenas is to establish "the ***absence***

of any communications regarding implementation of the alleged agreement" (Dkt. 60, at #5), the absence of such communications within Companies C, D, E, and F would be unsurprising given that the Indictment does not charge that these entities entered into (let alone participated in the "implementation of") the alleged agreement.

Nor does evidence about these entities' pay rates relate to the allegation that Defendant Jindal "falsely and misleadingly" told the Federal Trade Commission that "nothing at all is done collectively with any counterparts" (Dkt. #21 ¶ 20). That statement is "false[] and misleading[]" because Defendant Jindal acted "collectively" with "counterparts"—Individual 2 and Company B—by conspiring to lower pay rates and because he contacted several other counterparts to invite them to join the conspiracy (Dkt. #21 ¶ 12(a)–(c)). Whether Companies C, D, E, or F subsequently lowered pay rates has no bearing on the falsity of Defendant Jindal's statement. For those reasons, the evidence sought from these companies is irrelevant under Federal Rule of Evidence 401 and substantially more prejudicial than probative under Rule 403, and the Court should deny leave to issue the proposed subpoenas to Companies C, D, and F.

The same reasoning applies to the proposed subpoena to Giant Therapy. Giant Therapy is not one of the companies referenced in the Indictment. As the defendants acknowledge, the United States provided Defendant Jindal with a key in June 2021 identifying the names of the companies and individuals referenced in the Indictment (Dkt. #60, at 3), and Giant Therapy was not named. The defendants have not articulated any connection between Giant Therapy and this case, and any documents Giant Therapy may possess are irrelevant and inadmissible.

As for the proposed subpoenas to Company A and Company B, those subpoenas seek information about the implementation of the agreement among the defendants, Individual 2, Company A, and Company B. However, as the Court concluded in denying the defendants'

motion to dismiss, implementing an anticompetitive agreement is not an element of a Sherman Act violation (Dkt. #56, at 17). "[N]o overt act, no actual implementation of the agreement is necessary to constitute an offense," *United States v. Flom*, 558 F.2d 1179, 1183 (5th Cir. 1977); the crime is complete upon the formation of the agreement itself, *e.g.*, *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59, 252 (1940).

Even if the information that the defendants hope to obtain with subpoenas to Company A and Company B were relevant, the United States has already provided it to the defendants. As the United States represented in opposing the defendants' motion for a bill of particulars, the United States produced the transcript of Defendant Jindal's investigational hearing before the Federal Trade Commission, as well as the corresponding exhibits—which include a Company A spreadsheet documenting contract pay rates in each 2017 pay period and Defendant Jindal's emails to PTs and PTAs informing them of rate cuts (Dkt. #54, at 12). The United States produced comparable information regarding Company B's 2017 pay rates which, unlike Company A's pay rates, were not reduced under the agreement alleged in the Indictment. Because the defendants already have this information, they need not burden third parties with a Rule 17(c) subpoena. *See Nixon*, 418 U.S. at 699.

### B. The Subpoenas Lack the Requisite Specificity

The proposed subpoenas' lack of specificity provides an independent basis for the Court to deny the defendants' motion. "The[] specificity and relevance elements" of the Rule 17(c) inquiry "require more than the title of a document and conjecture as to its contents." *Arditti*, 955 F.2d at 345. While the defendants offer the conclusory assertion that their subpoenas are "tailored both in terms of subject and temporal scope" (Dkt. #60, at 6), those subpoenas broadly request "[a]ll communications and other records related to . . . therapist pay rates in 2017

(including payroll records)" (*e.g.*, Dkt. #60-2, at 1).[1] Nowhere do the defendants "set forth what the subpoena's materials contain," as is required to issue a Rule 17(c) subpoena, "forcing the court to speculate as to the specific nature of their contents and its relevance." *Arditti*, 955 F.2d at 346. The defendants' concession that they are using the subpoenas to establish the "***absence***" of relevant evidence (Dkt. #60, at 5) confirms the conjectural nature of their requests: They are engaged not in "a 'good faith effort . . . to obtain evidence,'" *Arditti*, 955 F.2d at 345 (quoting *Bowman Dairy*, 341 U.S. at 219–20), but rather in a "fishing expedition" to confirm that no such evidence exists, *see United States v. Bearden*, 423 F.3d 805, 810 n.4 (5th Cir. 1970) (quoting *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952)). This misuse of Rule 17(c) is particularly improper because the defendants are placing the burden of their fishing expedition on third parties—one of which has no connection to this case and most of which had no duty to preserve documents—by requiring them to review and produce twelve months' worth of five-year-old records.

Courts have repeatedly rejected overbroad "catch-all" requests for "all" documents of the sort that the defendants propose here. *E.g.*, *Bowman Dairy*, 341 U.S. at 221 (rejecting "catch-all provision" that sought all evidence "relevant to the allegations or charges contained in said indictment"); *United States v. Avalos-Martinez*, 299 F.R.D. 539, 542 (W.D. Tex. 2014) (rejecting request for "'any and all' materials" because defendant "does not identify any specific document by name, and instead seeks an entire class of materials"); *United States v. Hernandez*, No. 3:12-cr-0190-L(04), 2012 WL 6213263, at *2 (N.D. Tex. Dec. 13, 2012) (rejecting request for "*all* the phone calls for *all* of the cooperating co-conspirators"). The lack of specificity—and the

---

[1] The proposed subpoena attached as Exhibit A to the defendants' motion does not contain a request for records (Dkt. #60-1, at 1). Presumably, that subpoena was intended to include the same request as the remaining subpoenas (Dkt. #60-2, at 1; 60-3, at 1, 60-4, at 1; 60-5, at 1; 60-6, at 1).

defendants' use of subpoenas to confirm the nonexistence of evidence—indicates that the defendants are attempting "to use the subpoena duces tecum as a discovery device, which it is not." *United States v. Nixon*, 777 F.2d 958, 968–69 (5th Cir. 1985).

## CONCLUSION

The United States respectfully requests that the Court deny the defendants' motion.

Respectfully submitted,

*/s/ Matthew W. Lunder*

MATTHEW W. LUNDER
Bar No. MT 8671
Email:  matthew.lunder@usdoj.gov

JARIEL A. RENDELL
Bar No. DC 1027023
Email:  jariel.rendell@usdoj.gov

RACHEL KROLL
Bar No. NY 5751748
Email:  rachel.kroll@usdoj.gov

Attorneys
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 11300
Washington, DC 20530
(202) 476-0275

COUNSEL FOR THE UNITED STATES

## CERTIFICATE OF SERVICE

      I hereby certify that on February 29, 2022, I electronically served a true and correct copy of this document on Defendants' counsel of record by means of the Court's CM-ECF system.

                                      */s/ Matthew W. Lunder*
                                      Matthew W. Lunder