IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:20-CR-358 |
| | § | JUDGE MAZZANT |
| NEERAJ JINDAL (1) | § | |
| JOHN RODGERS (2) | § | |
| | § | |

**UNITED STATES' TRIAL BRIEF**

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ......................................................................................... 1

    A.   Grand Jury's Allegations .................................................................................. 1

    B.   Anticipated Testimonial Evidence ................................................................... 2

    C.   Anticipated Documentary Evidence ................................................................ 4

II.   PROCEDURAL HISTORY ......................................................................................... 5

    A.   The Court's Denial of the Motions to Dismiss ............................................... 5

    B.   Pending Motions .............................................................................................. 7

III.  ELEMENTS OF THE OFFENSES ............................................................................. 7

    A.   Count One: Violation of the Sherman Act (15 U.S.C. § 1) ............................ 7

    B.   Count Two: Conspiracy to Commit Offense Against the United States (18 U.S.C. § 371) .......................................................................................................... 8

    C.   Counts Three and Four: Obstruction of Proceedings Before the FTC (18 U.S.C. §§ 2, 1505) ......................................................................................................... 10

IV.  ANTICIPATED LEGAL AND EVIDENTIARY ISSUES ...................................... 12

    A.   Evidence Related to the Sale of Integrity Is Intrinsic to the Charged Conspiracies and Is Otherwise Admissible as Proof of Motive. ................................................. 12

    B.   Statements of Defendants, Co-Conspirators, and Agents Are Admissible as Non-Hearsay. .................................................................................................... 14

    C.   Many of the Words of Defendants, Co-Conspirators, and Agents Are Otherwise Admissible as Non-Hearsay ......................................................................... 16

    D.   The United States' Documentary Evidence Is Authentic. ............................ 17

    E.   Business Records of Integrity, YTS, and Others Are Admissible. .............. 17

    F.   Defendants' Co-Conspirator May Testify that She and the Defendants Entered into a Price-Fixing Conspiracy. ......................................................................... 18

    G.   The United States' Summary Charts Are Admissible to Prove Contents of Voluminous Evidence. ................................................................................. 19

    H.   The United States Plans to Use Demonstrative Exhibits. ............................. 20

    I.   The United States Asks the Court to Take Judicial Notice of Facts About the FTC.. 20

    J.   The United States Requests Permission for the FTC Court Reporter to Testify Remotely. ...................................................................................................... 21

    K.   The United States Continues to Hope that Defendants Would Agree to Certain Joint Stipulations to Streamline the Trial. ............................................................. 22

    L.   The United States Designates Special Agent Jeffrey L. Pollack as Its Case Agent. .. 22

V.   RESERVATION OF RIGHTS .................................................................................. 23

## **TABLE OF AUTHORITIES**

**Cases**

*Bourjaily v. United States*, 483 U.S. 171 (1987) ........................................................ 15

*Crawford v. Washington*, 541 U.S. 36 (2004) ............................................................ 18

*Genuine Parts Co. v. F.T.C.*, 445 F.2d 1382 (5th Cir. 1971) ...................................... 21

*Horn v. Quarterman*, 508 F.3d 306 (5th Cir. 2007) .................................................. 22

*In re McLain*, 516 F.3d 301 (5th Cir. 2008) .............................................................. 17

*McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232 (1980).......................... 7

*Nash v. United States*, 229 U.S. 373 (1913) .............................................................. 10

*Ohler v. United States*, 529 U.S. 753 (2000) ............................................................... 8

*Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991).................................................. 10

*United States v. All Star Indus.*, 962 F.2d 465 (5th Cir. 1992)............................. 7, 8, 10

*United States v. Arce*, 997 F.2d 1123 (5th Cir. 1993)................................................. 17

*United States v. Boyd*, 566 F.2d 929 (5th Cir. 1978) ................................................. 16

*United States v. Brooks*, 681 F.3d 678 (5th Cir. 2012)................................................. 9

*United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676 (5th Cir. 1981)........... 6, 7, 8, 19

*United States v. Ceballos*, 789 F.3d 607 (5th Cir. 2015) ............................................ 13

*United States v. Coyler*, 571 F.2d 941 (5th Cir. 1978) ............................................... 18

*United States v. Daughtry*, 502 F.2d 1019 (5th Cir. 1974) ......................................... 17

*United States v. Fisher*, 106 F.3d 622 (5th Cir. 1997)................................................. 8

*United States v. Flom*, 558 F.2d 1179 (5th Cir. 1977) ............................................... 18

*United States v. Flores*, 63 F.3d 1342 (5th Cir. 1995) ............................................... 15

*United States v. Fruchtman*, 421 F.2d 1019 (6th Cir. 1970) ...................................... 21

*United States v. Gigante*, 166 F.3d 75 (2d Cir. 1999) ............................................... 22

*United States v. Harms*, 442 F.3d 367 (5th Cir. 2006) .............................................. 20

*United States v. Howard*, 770 F.2d 57 (6th Cir. 1985) .............................................. 15

*United States v. James*, 510 F.2d 546 (5th Cir. 1975) ............................................... 15

*United States v. Johnson*, 68 F.3d 899 (5th Cir. 1995)................................................. 7

*United States v. Johnson*, 872 F.2d 612 (5th Cir. 1989)............................................ 15

*United States v. Jones*, 663 F.2d 567 (5th Cir 1981) ................................................. 16

*United States v. Jones*, 664 F.3d 966 (5th Cir. 2011) ................................................ 20

*United States v. Lua*, 990 F. Supp. 704 (N.D. Iowa 1998) ........................................... 6

*United States v. Maceo*, 947 F.2d 1191 (5th Cir. 1991) ............................................ 13

*United States v. Magee*, 821 F.2d 234 (5th Cir. 1987) .............................................. 15

*United States v. Miller*, 799 F.2d 985 (5th Cir. 1986) ............................................... 15

*United States v. Miller*, 994 F.2d 441 (8th Cir. 1993) ............................................... 17

*United States v. Morgan*, 505 F.3d 332 (5th Cir. 2007) ............................................ 18

*United States v. N.Y. Great Atl. & Pac. Tea Co.*, 137 F.2d 459 (5th Cir. 1943) ............ 19

*United States v. Realty Multi-List, Inc.*, 629 F.2d 1351 (5th Cir. 1980)......................... 8

*United States v. Rice*, 607 F.3d 133 (5th Cir. 2010) ................................................................. 13

*United States v. Rose*, 449 F.3d 627 (5th Cir. 2006) ............................................................... 7, 10

*United States v. Sanders*, 639 F.2d 268 (5th Cir. 1981) ........................................................... 16

*United States v. Shabani*, 513 U.S. 10 (1994) ........................................................................... 10

*United States v. Smith*, 481 F.3d 259 (5th Cir. 2007) ............................................................... 17

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940) ................................................. 8

*United States v. Taylor*, 210 F.3d 311 (5th Cir. 2000) .............................................................. 20

*United States v. Torres*, 685 F.2d 921 (5th Cir. 1982) .............................................................. 13

*United States v. Trenton Potteries Co.*, 273 U.S. 392 (1927) .................................................... 10

*United States v. USPlabs, LLC*, 338 F. Supp. 3d 547 (N.D. Tex. 2018) .................................... 21

*United States v. Valencia*, 600 F.3d 389 (5th Cir. 2010) .......................................................... 20

*United States v. Watkins*, 591 F.3d 780 (5th Cir. 2009) ........................................................... 13

*United States v. Williams*, 900 F.2d 823 (5th Cir. 1990) .......................................................... 13

*United States v. Winship*, 724 F.2d 1116 (5th Cir. 1984) .......................................................... 15

*United States v. Yates*, 438 F.3d 1307 (11th Cir. 2006) ............................................................ 22

*United States v. Young Bros.*, 728 F.2d 682 (5th Cir. 1984) ........................................................ 8

*West v. United States*, 359 F.2d 50 (8th Cir. 1966) .................................................................. 17

*Whitfield v. United States*, 543 U.S. 209 (2005) ....................................................................... 10

**Statutes**

15 U.S.C. § 1 .......................................................................................................................... 1, 6, 7

15 U.S.C. § 41 ............................................................................................................................ 21

18 U.S.C. § 1503 ........................................................................................................................ 11

18 U.S.C. § 1505 .................................................................................................................. 10, 11

18 U.S.C. § 1515 ........................................................................................................................ 11

18 U.S.C. § 2 .............................................................................................................................. 10

18 U.S.C. § 371 ........................................................................................................................ 1, 8

**Other Authorities**

*Pattern Jury Instructions (Criminal Cases)*, United States Court of Appeals for the Fifth Circuit (2019) .......................................................................................................... 9, 10, 11, 12

**Rules**

Federal Rule of Criminal Procedure 16 ....................................................................................... 4

Federal Rule of Evidence 201 ............................................................................................... 20, 21

Federal Rule of Evidence 404 ............................................................................................... 13, 14

Federal Rule of Evidence 602 .................................................................................................... 18

Federal Rule of Evidence 611 .................................................................................................... 20

Federal Rule of Evidence 615 .................................................................................................... 22

Federal Rule of Evidence 701 .................................................................................................... 18

Federal Rule of Evidence 801 ............................................................................................... 14, 16

Federal Rule of Evidence 803 ............................................................................................... 18, 19

Federal Rule of Evidence 901 ........................................................................................... 17

Federal Rule of Evidence 902 ........................................................................................... 17

Federal Rule of Evidence 1006 ..................................................................................... 4, 19

The United States submits this trial brief to summarize its anticipated evidence and address the legal and evidentiary issues likely to arise during trial.

## I.   FACTUAL BACKGROUND

### A.  Grand Jury's Allegations

In the First Superseding Indictment (the "Indictment"), the Grand Jury charged the defendants, Neeraj Jindal and John Rodgers, in four counts (Dkt. #21).  In Count One, the Grand Jury found probable cause that, from in or around March 2017 to in or around August 2017, both defendants knowingly entered into and engaged in a *per se* unlawful price-fixing conspiracy in violation of the Sherman Act, 15 U.S.C. § 1 (Dkt. #21 ¶ 11).

In Count Two, the Grand Jury found probable cause that, from in or around April 2017 and continuing at least through in or around October 2017, both defendants knowingly and willfully conspired to commit multiple offenses against the United States in violation of 18 U.S.C. § 371—specifically, (1) to corruptly influence, obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before a department or agency of the United States; (2) to knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States; and (3) to knowingly and willfully make and use a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the executive branch of the Government of the United States (Dkt. #21 ¶ 18).

In Count Three (against Defendant Jindal) and Count Four (against Defendant Rodgers), the Grand Jury found probable cause that each defendant corruptly endeavored to influence,

obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before a department or agency of the United States (Dkt. #21 ¶¶ 22, 25).

### B.  Anticipated Testimonial Evidence

The United States anticipates that the evidence at trial will prove that the defendants are guilty of all four charged offenses beyond a reasonable doubt.  The United States intends to offer testimony from approximately 16 witnesses, as described below.

The United States intends to offer testimony from the former co-owner of a home health agency, who will explain that home health agencies are private companies that arrange for health care workers to provide services to patients in their homes or assisted living facilities.  One form of home health care is physical therapy, which is provided by physical therapists ("PTs") and physical therapist assistants ("PTAs").  Home health agencies often contract with therapist staffing companies to send PTs and PTAs to home health patients, and they often receive reimbursement for the cost of home health care, including physical therapy, from the federal Medicare Program ("Medicare") or private insurers.

Testimony will demonstrate that when Medicare reimburses a home health agency, government funds usually flow across state lines and, in this case, Medicare reimbursement funds traveled from a Centers for Medicare and Medicaid Services ("CMS") bank account in Delaware to an intermediary in South Carolina and then to a home health agency in Texas.

The United States also intends to offer testimony from one of the defendants' co-conspirators, the owner of a competing therapist staffing company named Your Therapy Source ("YTS").  She will testify that she agreed with Defendant Rodgers, who she understood to be acting on behalf of Integrity and Defendant Jindal, to reduce her company's PTA pay rates.  She will also testify that she told Defendant Rodgers that PT pay rates should be lowered as well, and that

Defendant Rodgers agreed.  In addition to this co-conspirator, the United States intends to offer testimony from other individuals whom Defendant Jindal invited to join the conspiracy to reduce pay rates.

The United States also intends to offer testimony from four individuals who have either contracted with, been employed by, or owned Integrity: a PT and a PTA who worked for Integrity during the defendants' price-fixing conspiracy; Integrity's office manager; and the individual who bought Integrity from Defendant Jindal.  The PT and PTA will testify about how their pay rates were set and their ability, prior to March 2017, to negotiate their pay with Defendant Jindal and Integrity.  The PT and PTA will also testify that Defendant Jindal notified them in March 2017 that their pay rates would be decreased and that their pay rates were, in fact, subsequently decreased.  Integrity's office manager will testify about her role at the company, including correspondence that she handled and pay-rate changes that she recorded.  The individual who bought Integrity from Defendant Jindal will testify about the sale and will explain that, as a result of the sale, there were substantial payoffs to Defendant Rodgers and Defendant Jindal and his family.

The United States sought a joint stipulation to basic facts about the Federal Trade Commission ("FTC") and its investigation into Integrity.  But the defendants did not agree. Therefore, the United States intends to offer testimony from an employee of the FTC, who will testify that, beginning in April 2017, the FTC investigated whether Integrity or others had engaged in an effort to restrain trade in the provision of physical therapy services.  The employee will establish the admissibility of records used in the FTC's investigation.  The United States also sought a joint stipulation that the defendants' investigational hearings at the FTC were stenographically recorded, but the defendants did not agree.  The United States intends to offer

3

testimony from the court reporter who stenographically recorded the defendants' hearings before the FTC to explain stenographic recording and, if necessary, authenticate the transcripts.

The United States also intends to offer expert testimony from Federal Bureau of Investigation ("FBI") Computer Scientist Mnsa Maat, an expert in digital forensics, forensic analysis, and forensic examination.  Mr. Maat will explain email and messaging technologies and offer opinions about, among other things, the defendants' use of various email and messaging technologies.  The United States has provided to the defendants a written summary of Mr. Maat's opinions, the bases and reasons for those opinions, and Mr. Maat's qualifications.  *See* Fed. R. Crim. P. 16(a)(1)(G).  Finally, the United States intends to offer testimony from FBI Special Agent Jeffrey L. Pollack, who will summarize voluminous records, including communications between the two defendants and their obstructive endeavors, false statements, and false writings in relation to the FTC proceeding.  *See* Fed. R. Evid. 1006.

### C.  Anticipated Documentary Evidence

The United States plans to introduce email communications indicating that a home health agency co-owner notified Defendant Jindal of its intent to reduce the rates paid to Integrity for patient referrals and that the co-owner later met with Defendant Jindal and negotiated these reduced rates.  The United States further plans to introduce messages that Defendant Rodgers, on behalf of and in conspiracy with Defendant Jindal and Integrity, then exchanged with the owner of YTS in which they agreed to reduce pay rates for PTs and PTAs, and in which Defendant Rodgers confirmed that Integrity had lowered the pay rates as agreed.  The United States will also introduce messages sent by Defendant Jindal to four other owners of therapist staffing companies in which he solicited their participation in the conspiracy to reduce pay rates and admitted his involvement in the conspiracy.  Finally, the United States will introduce email communications

and Integrity records showing that Defendant Jindal subsequently reduced the pay of various PTs and PTAs who contracted with Integrity.

In addition, the United States plans to introduce correspondence and email communications demonstrating that the FTC investigated whether Integrity or others had engaged in an effort to restrain trade in the provision of physical therapy services. The United States intends to introduce email communications between Defendant Jindal and the FTC, as well as documents that Defendant Jindal provided to the FTC during the investigation, that were false and misleading and contained false and misleading statements made by Defendant Jindal. The United States will also introduce false and misleading statements that Defendants Jindal and Rodgers made during investigational hearings conducted by the FTC. The United States will also introduce evidence that Defendants Jindal and Rodgers endeavored to withhold, conceal, and destroy documents and information. And the United States will introduce summaries of phone calls and communications between the defendants, and among the defendants and others, during the charged conspiracies.

## II.  PROCEDURAL HISTORY

### A.  The Court's Denial of the Motions to Dismiss

On May 25, 2021, Defendant Jindal filed a motion to dismiss Count One of the Indictment on the basis that (1) the Grand Jury had not alleged a *per se* violation of the Sherman Act and (2) the charge in Count One violated the Fifth and Sixth Amendments of the Constitution (Dkt. #36). Defendant Rodgers subsequently adopted the arguments made in Defendant Jindal's motion and argued, as an independent ground for dismissing all charges against Defendant Rodgers, that the United States orally agreed not to prosecute him (Dkt. #45).

The Court denied both motions to dismiss. As to Defendant Jindal's motion, the Court held that the grand jury "sufficiently allege[d] facts constituting a *per se* violation of the Sherman

Act" because "Count One track[ed] the elements of a *per se* violation of 15 U.S.C. § 1—that "(1) the defendant knowingly formed, joined, or participated in a contract, combination, or conspiracy; (2) its purpose was to fix, raise, maintain, or stabilize prices; and (3) the activities subject to the conspiracy occurred in the flow of interstate commerce or substantially affected interstate commerce" (Dkt. #56, at 17–18).  Moreover, the Indictment complied with the Fifth Amendment because "decades of precedent gave Defendants more than sufficient notice that agreements among competitors to fix the price of labor are *per se* illegal"—a point that also defeated the defendants' arguments for application of the rule of lenity (Dkt. #56, at 21–23).  And the Indictment complied with the Sixth Amendment because, contrary to the defendants' contention, it did not "unconstitutionally take from the jury the determination of intent"; under binding Fifth Circuit precedent, "a finding that [defendants] intended to fix prices supplies the criminal intent necessary for a conviction of a criminal antitrust offense" in accordance with the Sixth Amendment (Dkt. #56, at 24 (quoting *United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 684 (5th Cir. 1981))).

As to Defendant Rodgers's motion, the Court held that he failed to prove that he reached an oral non-prosecution agreement with the United States (Dkt. #56, at 34–38).  "[N]o agreement was reached as a matter of law," the Court held, because "there was no 'meeting of the minds' on all essential terms," such as "what level of cooperation would be required of [Rodgers] in order for h[im] to satisfy the purported [non-prosecution] agreement [and] who would determine whether [Rodgers] had fulfilled [his] part of the [] agreement" (Dkt. #56, at 36–37 (quoting *United States v. Lua*, 990 F. Supp. 704, 711 (N.D. Iowa 1998))).  Defendant Rodgers filed a motion for reconsideration asking for an evidentiary hearing (Dkt. #57), which the Court denied (Dkt. #65).

### B.  Pending Motions

Contemporaneously with the filing of this brief, the United States has filed motions *in limine* and proposed jury instructions with the Court.  Also pending is Defendant Jindal's motion for a bill of particulars (Dkt. #53), which the United States understands has been referred to Magistrate Judge Kimberly C. Priest Johnson.

## III. ELEMENTS OF THE OFFENSES

### A.  Count One: Violation of the Sherman Act (15 U.S.C. § 1)

Section 1 of the Sherman Act states, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.

As the Court held in its order denying the motion to dismiss Count One, the Indictment "alleges facts constituting a *per se* violation of the Sherman Act" (Dkt. #56, at 18).  To prove a *per se* violation of Section 1 of the Sherman Act, the United States must establish the following elements beyond a reasonable doubt:

> (1) A conspiracy existed between two or more competitors to lower pay rates to PTs and/or PTAs from in or around March 2017 to in or around August 2017;
>
> (2) The defendants knowingly joined the conspiracy; and
>
> (3) The conspiracy involved interstate trade or commerce.

(Dkt. #56 at 17); *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 246 (1980); *United States v. Rose*, 449 F.3d 627, 630 (5th Cir. 2006); *United States v. Johnson*, 68 F.3d 899, 904 (5th Cir. 1995); *United States v. All Star Indus.*, 962 F.2d 465, 474–75 (5th Cir. 1992); *Cargo Serv. Stations*, 657 F.2d at 681, 683–84.

Because the Indictment alleges facts constituting a *per se* violation, the United States need not establish that the defendants' conduct had anticompetitive effects or caused harm in any market, as this Court recognized in denying the motion to dismiss Count One (Dkt. #56, at 17). *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59, 252 (1940); *All Star Indus.*, 962 F.2d at 475 n.21; *United States v. Realty Multi-List, Inc.*, 629 F.2d 1351, 1362 (5th Cir. 1980). As the Court also recognized in its order on the motion to dismiss (Dkt. #56, at 24), the United States is not "required to prove that the defendant[s] knew [their] actions were illegal or that [they] specifically intended to restrain trade or violate the law," *All Star Indus.*, 962 F.2d at 474 n.18. Instead, the United States need only show that the defendants "knowingly joined or participated in the conspiracy." *United States v. Young Bros.*, 728 F.2d 682, 687 (5th Cir. 1984); *see Cargo Serv. Stations*, 657 F.2d at 681–84.

**B. Count Two: Conspiracy to Commit Offense Against the United States (18 U.S.C. § 371)**

Under 18 U.S.C. § 371, "If two or more persons conspire . . . to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

The Indictment charges that the defendants' conspiracy had three objects (Dkt. #21 ¶ 18); the United States need only establish that the defendants conspired to achieve at least one—and not necessarily all three—of these objects, though the jury must unanimously agree on at least one object to convict on Count Two, *see United States v. Fisher*, 106 F.3d 622, 633 (5th Cir. 1997), *abrogated on other grounds by Ohler v. United States*, 529 U.S. 753 (2000). To prove that the defendants violated § 371, the United States must establish the following elements beyond a reasonable doubt:

8

(1) The defendants agreed to (a) corruptly influence, obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before a department or agency of the United States; and/or (b) knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States; and/or (c) knowingly and willfully make and use a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the executive branch of the Government of the United States;

(2) The defendants knew the purpose of the agreement and joined in it willfully, that is, with the intent to further the purpose; and

(3) At least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in Count Two of the indictment, in order to accomplish some object or purpose of the conspiracy.

*Pattern Jury Instructions (Criminal Cases)*, United States Court of Appeals for the Fifth Circuit, No. 2.15A (2019).

The United States need not prove that the defendants knew that the purpose of their agreement was in fact unlawful—that is, in violation of a statute. *United States v. Brooks*, 681 F.3d 678, 700 (5th Cir. 2012).

Although Counts One and Two each charge the defendants with a conspiracy of some kind, the elements of these charges differ in material respects. For instance, with regard to Count One, the United States must prove general intent—that the defendants knowingly joined a conspiracy to restrain trade. The United States need not prove that the defendants specifically intended to

restrain trade. *All Star Indus.*, 962 F.2d at 474 n.18; Dkt. #56, at 24.  But with regard to Count Two, the United States must prove that the defendants joined in their conspiracy with the specific intent to further the purpose of the conspiracy.  *Pattern Jury Instructions (Criminal Cases)*, United States Court of Appeals for the Fifth Circuit, No. 2.15A (2019).

Similarly, with regard to Count One, the United States need not prove an overt act in furtherance of the conspiracy to fix prices.  A Sherman Act conspiracy is complete upon the agreement or mutual understanding of the parties.  The United States need not prove that the conspiracy succeeded or achieved its objective or that the conspirators took steps to effectuate the conspiracy.  *See Whitfield v. United States*, 543 U.S. 209, 213–14 (2005); *United States v. Shabani*, 513 U.S. 10, 14 (1994); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 330 (1991); *Socony-Vacuum Oil. Co.*, 310 U.S. at 224 n.59; *United States v. Trenton Potteries Co.*, 273 U.S. 392, 402 (1927); *Nash v. United States*, 229 U.S. 373, 378 (1913); *Rose*, 449 F.3d at 630.  In contrast, Count Two requires the United States to prove that at least one of the defendants committed an overt act in furtherance of the conspiracy.  *Pattern Jury Instructions (Criminal Cases)*, United States Court of Appeals for the Fifth Circuit, No. 2.15A (2019).

## C.  Counts Three and Four: Obstruction of Proceedings Before the FTC (18 U.S.C. §§ 2, 1505)

Under 18 U.S.C. § 1505, "Whoever corruptly, or by threats of force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States . . . [s]hall be fined under this title, imprisoned not more than 5 years . . . , or both."  Congress defined "corruptly," "[a]s used in section 1505," to "mean[] acting with an improper purpose, personally or by influencing another,

including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." *Id.* § 1515(b).

To prove that each defendant violated § 1505, the United States must establish the following elements beyond a reasonable doubt:

(1) There was a proceeding pending before any department or agency of the United States;

(2) The defendant knew of the pending proceeding;

(3) The defendant endeavored to influence, obstruct, or impede the due and proper administration of the law in that proceeding; and

(4) The defendant's acts were done corruptly.

18 U.S.C. §§ 1505, 1515(b) ; *see Pattern Jury Instructions (Criminal Cases)*, United States Court of Appeals for the Fifth Circuit, No. 2.63A (2019) (providing pattern jury instructions for 18 U.S.C. § 1503(a), which criminalizes corruptly obstructing the administration of justice).

The indictment charges that each of the defendants violated § 1505 by at least one of two means: (1) "ma[king] false and misleading statements to the FTC, withh[o]ld[ing] and conceal[ing] information from the FTC, and ma[king] phone calls and sen[ding] text messages as part of his corrupt endeavor to influence, obstruct, and impede the FTC investigation," or (2) "aid[ing] and abett[ing]" the other defendant in "corruptly endeavor[ing] to influence, obstruct, and impede the FTC Investigation" (Dkt. #21 ¶¶ 22, 25).  To prove that each defendant aided and abetted the other's violation of § 1505, the United States must establish the following elements beyond a reasonable doubt:

(1) The offense of corruptly endeavoring to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had

before any department or agency of the United States was committed by the other

defendant;

(2) The defendant associated with the criminal venture;

(3) The defendant purposefully participated in the criminal venture; and

(4) The defendant sought by action to make that venture successful.

*Pattern Jury Instructions (Criminal Cases)*, United States Court of Appeals for the Fifth Circuit,

No. 2.04 (2019).  "To associate with the criminal venture" means that the defendant shared the

criminal intent of the principal.  *Id.*  "To participate in the criminal venture" means that the

defendant engaged in some affirmative conduct designed to aid the venture or assist the principal

of the crime.  *Id.*

## IV.  ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

### A.  Evidence Related to the Sale of Integrity Is Intrinsic to the Charged Conspiracies and Is Otherwise Admissible as Proof of Motive.

The United States intends to present evidence, including the testimony of John Olsen,

regarding the circumstances surrounding the sale of Integrity from Defendant Jindal to Mr. Olsen

in 2017 and the associated financial benefits to the defendants.  On March 1, 2022, the United

States gave notice to the defendants of its intent to present this evidence, and has disclosed reports

of interviews of Mr. Olsen, and related documents, to the defendants in discovery.  Defendant

Jindal's counsel notified the United States that they "do not feel the evidence relating to Mr. Olsen

is in any way relevant to the charges" and they would be filing a motion *in limine* on behalf of

Defendant Jindal to exclude the evidence described in the United States' notice.

Mr. Olsen's testimony and related evidence are admissible because they are inextricably

intertwined with evidence of the crimes charged in the indictment and thus will "complete the

story of the crime by proving the immediate context of events in time and place . . . and to evaluate

all of the circumstances under which the defendant[s] acted." *United States v. Ceballos*, 789 F.3d 607, 620–21 (5th Cir. 2015) (quoting *United States v. Rice*, 607 F.3d 133, 141 (5th Cir. 2010)). This evidence is "intrinsic" and is not subject to Federal Rule of Evidence 404(b), which excludes extrinsic other-acts evidence when introduced "to prove the character of a person in order to show action in conformity therewith." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990) (other-acts evidence "is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged" (quoting *United States v. Torres*, 685 F.2d 921, 924 (5th Cir. 1982))); *see also United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991) ("Evidence of an uncharged offense arising out of the same transactions as the offense charged is not extrinsic evidence within the meaning of Rule 404(b)."). Evidence of the circumstances surrounding the sale of Integrity from Defendant Jindal to John Olsen in 2017, and of the associated financial benefits to the defendants, is intrinsic because it constitutes "the immediate context of events in time and place" with respect to the charged conspiracies:  it shows "the circumstances under which the defendant[s] acted." *Ceballos*, 789 F.3d at 620–21 (quoting *Rice*, 607 F.3d at 141).  Moreover, evidence of the earlier sale of Integrity from Defendant Rodgers to Defendant Jindal in 2013 is intrinsic because it is relevant to how the conspiracies came about and how Defendants Jindal and Rodgers became members.  *Id.* at 621 ("In the context of a conspiracy, evidence is intrinsic to the underlying offense 'if it is relevant to establish how the conspiracy came about, how it was structured, and how the [defendants] became a member.'" (quoting *United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009))).

Even if Mr. Olsen's testimony and related evidence were not intrinsic, the evidence would still be admissible because it establishes motive for Defendants Jindal and Rodgers to commit the

crimes.   Indeed, Rule 404(b) provides that other-acts evidence "may . . . be admissible" for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."   In this case, Mr. Olsen's testimony and related evidence are admissible because they will illustrate the financial benefits that accrued to the defendants in connection with the sale of Integrity from Defendant Jindal to Mr. Olsen in 2017.   These financial benefits incentivized and motivated the defendants' price-fixing scheme, so they will show the defendants' motive, intent, preparation, plan, knowledge, and absence of mistake or accident in conspiring to reduce pay rates.   Because the evidence serves a legitimate purpose, rather than as proof of a propensity to act "in accordance" with a "character," the evidence would be admissible even if it were extrinsic.

## B.  Statements of Defendants, Co-Conspirators, and Agents Are Admissible as Non-Hearsay.

The United States intends to offer into evidence out-of-court statements by the defendants, their co-conspirators, and their agents.   These statements include text messages, email communications, and sworn testimony.   Any statement made by one of the defendants or his agent(s) is admissible non-hearsay against that defendant as an opposing party's statement.   Fed. R. Evid. 801(d)(2)(A), (D).

In addition, because the defendants conspired with one another, statements made by either defendant "during and in furtherance of the conspiracy" are admissible non-hearsay against that defendant *and* against his co-defendant.   Fed. R. Evid. 801(d)(2)(E).   Before instructing that the jury may consider these co-conspirator statements for the truth of the matter asserted against the non-declarant defendant, the court must make three findings: (1) that a conspiracy existed; (2) that the declarant and the non-declarant defendant were members of the conspiracy; and (3) that the statement was made during the course and in furtherance of the conspiracy.   *United States v. James*,

14

510 F.2d 546, 549 (5th Cir. 1975).  The Court need not make these findings at a distinct hearing

or prior to any statement's admission under the co-conspirator exclusion from the hearsay rule.

*United States v. Winship*, 724 F.2d 1116, 1121–22 (5th Cir. 1984).  Rather, the Court may admit

the statement in the normal course of trial, subject to later proof of the conspiracy.  *Id.*  The United

States may use the statement itself to support the necessary findings.  *Bourjaily v. United States*,

483 U.S. 171, 178–79 (1987).

To admit a statement under the co-conspirator exclusion from the rule against hearsay, the

evidence of a conspiracy's existence "need only be credible and sufficient to support a finding of

a joint undertaking; the conspiracy's existence need not be proved beyond a reasonable doubt."

*James*, 510 F.2d at 549.  Similarly, in assessing whether a statement was made "in furtherance of

the conspiracy," courts "must not apply the standard too strictly, lest [they] defeat the purpose" of

the exclusion.  *Id.*  Courts have held that boasts and puffery, attempts at concealment and avoiding

detection, statements identifying a conspirator's role in the conspiracy, and statements to

encourage loyalty and obedience among the conspirators were made in furtherance of the

conspiracy.  *United States v. Flores,* 63 F.3d 1342, 1377 (5th Cir. 1995) (statements encouraging

loyalty and obedience); *United States v. Johnson*, 872 F.2d 612, 623 (5th Cir. 1989) (boasts and

puffery); *United States v. Magee*, 821 F.2d 234, 244 (5th Cir. 1987) (identifying conspirator's

role); *United States v. Miller*, 799 F.2d 985, 990 (5th Cir. 1986) (boasts and puffery); *United States

v. Howard*, 770 F.2d 57, 60–61 (6th Cir. 1985) (attempts at concealment and avoiding detection).

Conspirator statements are admissible against all co-conspirators even if the conspirator

making the statement is now a prosecution witness.  The United States expects one of the

defendants' co-conspirators to testify that she communicated with Defendant Rodgers about

lowering pay rates for PTs and PTAs, and agreed with Defendant Rodgers, who was acting on

15

behalf of himself, Defendant Jindal, and Integrity, to lower pay rates for PTs and PTAs.  The United States will also offer multiple co-conspirator statements into evidence in the form of emails and text messages.

### C.  Many of the Words of Defendants, Co-Conspirators, and Agents Are Otherwise Admissible as Non-Hearsay.

Many of the out-of-court words of the defendants, their co-conspirators, and their agents will be admissible as non-hearsay for additional reasons under Federal Rule of Evidence 801(a) and (c).  Some of the words are not "statements," and thus not hearsay, because they are not "assertions" or were not "intended as an assertion."  Fed. R. Evid. 801(a).  Other words that are statements will still not be hearsay because they are not introduced "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  For example, false and misleading statements made by the defendants to the FTC will be introduced for their falsity, not their truth.  Moreover, when a party enters into an agreement, that verbal or written act typically is not capable of being either true or false and therefore is usually neither a statement nor offered for the truth of the matter asserted.  *See United States v. Jones*, 663 F.2d 567, 571 (5th Cir 1981) (defendant's threats were properly admitted because they "contain[] the operative words of this criminal action" and were "not 'offered in evidence to prove the truth of the matter asserted'" (quoting Fed. R. Evid. 801(c))); *United States v. Sanders*, 639 F.2d 268, 270 (5th Cir. 1981) ("[I]f the statement was offered on a non-assertive basis, i.e., for proof only of the fact it was said, the statement would not be subject to the hearsay objection."); *United States v. Boyd*, 566 F.2d 929, 937 (5th Cir. 1978) (tape-recorded conversations not hearsay but "constitute verbal acts and can be considered part of the offense in question").  For example, assent to lower pay rates is such an act.  Hence, evidence of that assent— even when it takes the form of an out-of-court statement—is admissible.

### D.  The United States' Documentary Evidence Is Authentic.

As a condition precedent to the admission of evidence, the proponent of that evidence must satisfy the requirements for authentication under Federal Rule of Evidence 901.  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  The most common way to authenticate a piece of evidence is through testimony by a witness with sufficient knowledge that the matter is what it is claimed to be.  Fed. R. Evid. 901(b)(1).  The United States will authenticate some of the documents that it seeks to introduce through this method.  A proponent may also "authenticate a document with circumstantial evidence, 'including the document's own distinctive characteristics and the circumstances surrounding its discovery.'"  *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (quoting *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993)).

The United States will offer evidence that has been in the custody and control of more than one person.  The Fifth Circuit has applied a "presumption of regularity" to "the handling of evidence within the control of public officials."  *United States v. Daughtry*, 502 F.2d 1019, 1021 & n.3 (5th Cir. 1974) (quoting *West v. United States*, 359 F.2d 50, 55 (8th Cir. 1966)).  "Any break in the chain of custody goes to the weight of the evidence, not its admissibility."  *United States v. Smith*, 481 F.3d 259, 265 (5th Cir. 2007).  The United States need not introduce testimony from every individual who handled the evidence.  *See United States v. Miller*, 994 F.2d 441, 443 (8th Cir. 1993).

### E.  Business Records of Integrity, YTS, and Others Are Admissible.

The United States will offer exhibits that consist of business records from various entities, including Integrity, YTS, cell phone companies, financial institutions, and the home health agency organization mentioned in Section I.B above.  Under Rule 902(11), the United States has secured

affidavits from records custodians for the corresponding business records, certifying that the elements of Rule 803(6)'s business-records exception to the hearsay rule have been met.  So long as the records are trustworthy, an employee of a company that receives and maintains specific records in the regular course of business may lay the foundation for application of the business-records exception even if the employee does not work for the company that prepared or sent the business records.  *United States v. Flom*, 558 F.2d 1179, 1182 (5th Cir. 1977).  All that is required is that the witness have knowledge of how the records arrived and were handled upon receipt.  *United States v. Coyler*, 571 F.2d 941, 947 (5th Cir. 1978).  The United States has disclosed these business records in discovery, along with the corresponding affidavits, to the defendants.

The business records the United States seeks to admit are not testimonial in nature.  *Crawford v. Washington*, 541 U.S. 36, 56 (2004) ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007) ("[W]e hold that, after *Crawford*, business records are not testimonial in nature and their admission at trial is not a violation of the Confrontation Clause.").  Nor does *Crawford*'s bar on testimonial evidence "apply to the foundational evidence authenticating business records in preliminary determinations of the admissibility of evidence."  *Morgan*, 505 F.3d at 339.

### F.  Defendants' Co-Conspirator May Testify that She and the Defendants Entered into a Price-Fixing Conspiracy.

The United States anticipates that the owner of YTS will testify that she and the defendants entered into a conspiracy to lower therapists' pay rates.  Such testimony is admissible.  A witness may state on the basis of personal observations, knowledge, and inferences whether a particular individual was a participant in a charged conspiracy and whether an agreement was reached in a particular transaction or conversation.  *See* Fed. R. Evid. 602, 701; *United States v. N.Y. Great Atl.*

18

*& Pac. Tea Co.*, 137 F.2d 459, 463 (5th Cir. 1943) ("Just as a witness may in a civil suit say, not as a conclusion but as a fact, that he made or entered into an agreement at a certain time and place, so an indictment may charge, and a witness may say, in a criminal case that a defendant made or entered into an agreement at a particular time or in a particular place."); *see also Cargo Serv. Stations*, 657 F.2d at 680 (witness permitted to testify that retail gasoline competitors met and reached "implied understanding" on price difference).   This testimony is not impermissible hearsay, but rather a statement of the declarant's statement of mind.   *See* Fed. R. Evid. 803(3).

### G. The United States' Summary Charts Are Admissible to Prove Contents of Voluminous Evidence.

The United States plans to offer summary charts as substantive evidence under Federal Rule of Evidence 1006.   To assist the jury in understanding the evidence contained in certain voluminous records, Special Agent Jeffrey L. Pollack will summarize the contents of this evidence. The summaries will show: communications between the defendants and between the defendants and others, including phone calls, emails, and text messages, providing circumstantial evidence of their conspiracy to fix prices and of their motive to conspire to fix prices; communications between the defendants and between the defendants and others, including phone calls, emails, and text messages, showing their conspiracy to obstruct the FTC's investigation; and statements made by the defendants during their investigational hearings before the FTC, showing patterns and similarities between their false and misleading statements.   Also to assist the jury in understanding evidence contained in voluminous records, Computer Scientist Mnsa Maat will summarize the email header data he extracted from certain emails and then analyzed.

Rule 1006 provides for admission of "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."   The foundation for admission of a summary chart can be laid by any witness who

participated in the chart's preparation and has made a comparison between it and the underlying evidence.  In this case, the United States will present the summary charts through the testimony of the witnesses who prepared them.  The summary charts will accurately summarize the underlying information and data.

The United States disclosed the materials underlying the summary charts to the defendants during discovery.  While the underlying materials need not be admitted into evidence, those materials must be admissible.  *United States v. Jones*, 664 F.3d 966, 975–76 (5th Cir. 2011); *United States v. Valencia*, 600 F.3d 389, 417 (5th Cir. 2010).  If the underlying materials could properly be taken into the jury room, the summary should likewise be permitted in the jury room.

**H.  The United States Plans to Use Demonstrative Exhibits.**

The United States plans to present demonstrative exhibits to aid in its presentation of the case.  These exhibits may identify the key players in the defendants' conspiracy, illustrate the structure of the therapist staffing industry and the home healthcare economy, and depict the timing of key events in the defendants' conspiracies and obstruction endeavors.  "[A]llowing the use of charts as 'pedagogical' devices intended to present the government's version of the case is within the bounds of the trial court's discretion to control the presentation of evidence under [Federal Rule of Evidence] 611(a)."  *United States v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006) (quoting *United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000)).  These charts are not admitted into evidence but serve as aids to help explain the facts disclosed by the evidence.  *Id.*

**I.  The United States Asks the Court to Take Judicial Notice of Facts About the FTC.**

Federal Rule of Evidence 201(b) authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Under Rule 201(c)(2), courts "must take judicial notice if a

party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). In this case, the United States asks the Court to take judicial notice that the FTC is an agency of the United States and that an FTC investigation is a proceeding pending before an agency of the United States. *See* 15 U.S.C. § 41; *Genuine Parts Co. v. F.T.C.*, 445 F.2d 1382, 1387 (5th Cir. 1971) ("A typical agency is the Federal Trade Commission."); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir. 1970) (holding that an investigation conducted by an FTC attorney was a "proceeding" within the meaning of 18 U.S.C. § 1505, because "'proceeding' is a term of broad scope, encompassing both the investigative and adjudicative functions of a department or agency"); *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 578–79 (N.D. Tex. 2018) (collecting cases).  Under Rule 201(f), "the court must instruct the jury that it may or may not accept the noticed fact as conclusive."

### J.  The United States Requests Permission for the FTC Court Reporter to Testify Remotely.

After the United States served a trial subpoena on the court reporter who stenographically recorded the defendants' hearings before the FTC, he represented to the United States that his medical condition would make it difficult for him to travel to testify in person.[1]  Subject to verification of his medical condition by the witness's doctor, the United States requests that the Court permit him to testify remotely.   The United States proposes using two-way videoconferencing to allow the witness to testify live during trial.  The court reporter will explain stenographic recording to the jury and, if necessary, authenticate and lay foundation for the transcripts from the defendants' FTC hearings.  Live videoconferencing would preserve all of the critical characteristics of in-court testimony: the witness would be sworn in and subject to full

---

[1] He also represented that traveling would be a burden because of his work schedule, but the United States bases this request solely on his medical conditions.

examination; he would testify in full view of the jury, court, and counsel; and the defendants could observe his testimony and cross-examine him.  *See Horn v. Quarterman*, 508 F.3d 306, 314–20 (5th Cir. 2007) (concluding that a Texas state court did not unreasonably apply clearly established federal law in allowing the testimony of an ill witness via two-way closed-circuit television); *United States v. Gigante*, 166 F.3d 75, 80-81 (2d Cir. 1999) (allowing an ill witness in a criminal trial "to testify via two-way closed circuit television when this furthers the interest of justice" and holding that such testimony did not violate the defendant's confrontation right).  *But cf. United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006) (en banc) (observing "that confrontation through a video monitor is not the same as physical face-to-face confrontation" and requiring a case-by-case finding of necessity to justify use of video testimony).

### K.  The United States Continues to Hope that Defendants Would Agree to Certain Joint Stipulations to Streamline the Trial.

In an effort to streamline the trial, the United States sought to enter into several joint stipulations with the defendants, but the defendants have not agreed.  As a result, the United States is prepared to present lengthy testimony to establish basic facts about Medicare funds, as to Count One, and the FTC and its investigation, as to Counts Two through Four.  Should the defendants reconsider and agree to stipulate, however, that would obviate the need for the United States to call several witnesses.

### L.  The United States Designates Special Agent Jeffrey L. Pollack as Its Case Agent.

Under Federal Rule of Evidence 615, the United States designates Special Agent Jeffrey L. Pollack as its case agent and requests that the Court exempt him from any sequestration order. Special Agent Pollack has detailed knowledge of the case, and his presence is integral to the presentation of the United States' case.

22

## V.   RESERVATION OF RIGHTS

The United States reserves the right to supplement this brief as additional issues come to

its attention.


Dated: March 28, 2022

                                          Respectfully submitted,

                                          */s/ Matthew W. Lunder*

                                          MATTHEW W. LUNDER
                                          Bar No. MT 8671
                                          Email:  matthew.lunder@usdoj.gov

                                          JARIEL A. RENDELL
                                          Bar No. DC 1027023
                                          Email:  jariel.rendell@usdoj.gov

                                          RACHEL KROLL
                                          Bar No. NY 5751748
                                          Email:  rachel.kroll@usdoj.gov

                                          Attorneys
                                          U.S. Department of Justice
                                          Antitrust Division
                                          450 Fifth Street, N.W., Suite 11300
                                          Washington, DC 20530
                                          (202) 476-0275

                                          COUNSEL FOR THE UNITED STATES

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 28, 2022, I electronically served a true and correct copy of

this document on Defendants' counsel of record by means of the Court's CM-ECF system.


<u>*/s/ Matthew W. Lunder*</u>
Matthew W. Lunder