# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | No.  4:20-CR-00358 |
| | § | Judge Mazzant |
| NEERAJ JINDAL (1) | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the United States' Motion to Quash Defendant Jindal's Subpoenas for Documents from Third Parties (Dkt. #82). Having considered the motions and the relevant pleadings, the Court finds the motions should be **DENIED**.

## BACKGROUND

The background of this case is more thoroughly set forth in the Court's Order on Defendants' Motion to Dismiss (Dkt. #56).  Highly summarized, on April 15, 2021, the Government filed the First Superseding Indictment (hereinafter "Indictment") as to Neeraj Jindal ("Jindal") and John Rodgers ("Rodgers") (Dkt. #21).  Pursuant to the Indictment, Defendants were charged with: (1) conspiring to fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (Count One); (2) conspiring to commit multiple offenses against the United States in violation of 18 U.S.C. § 371 (Count 2); and (3) obstructing proceedings before the Federal Trade Commission in violation of 18 U.S.C. § 1505 (Count Three and Four) (Dkt. #21).

Turning to the present dispute, the United States moves to quash Defendant Jindal's trial subpoenas that were served on three companies identified in the Indictment, including Dwell Therapy, Innovative Therapy Resources, and Therapy Heroes (Dkt. #90 at p. 3).  More specifically, these subpoenas command the respective witnesses "to appear and testify at trial as well as bring

documents and communications related to therapist pay rates in March, April, and May 2017"
(Dkt. #90 at p. 3 (internal citations omitted)).

On March 29, 2022, the United States filed the present motion (Dkt. #82).  On March 31,
2022, Jindal file his response, and the United States filed its reply (Dkt. #90).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 17(c) governs the issuance of subpoenas duces tecum
in federal criminal proceedings. *United States v. Nixon*, 418 U.S. 683, 697–98 (1974).  Every Rule
17(c) "subpoena must be a good faith effort . . . to obtain evidence, and the court's power to quash
or modify subpoenas may be used to ensure that Rule 17(c) is used only for that purpose. *United
States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992).  A subpoena under Rule 17 cannot be used to
circumvent the limitations on discovery mandated by Rule 16. *Id.* at 346.  Moreover, "Rule 17(c)
was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United
States*, 341 U.S. 214, 220 (1951).

The party seeking access to materials under a Rule 17(c) subpoena bears the burden of
showing the subpoenaed document: (1) is relevant; (2) is admissible; and (3) has been requested
with adequate specificity. *Arditti*, 955 F.2d at 345.  The documents must have "real relevance to
the particular counts for which [the defendant] was charged." *United States v. Butler*, 429 F.3d
140, 149 (5th Cir. 2005).  Admissibility requires a "movant to make a 'sufficient preliminary
showing that the requested material contains evidence admissible with respect to the offenses
charged in the indictment.'" *United States v. Skilling*, No. H–04–025, 2006 WL 1006622, at *3
(S.D. Tex. Apr. 13, 2006) (quoting *Nixon*, 418 U.S. at 700).  Specificity serves to prevent a
subpoena from being converted into a license for a "fishing expedition to see what may turn up."
*Id.* at *2.

## ANALYSIS

The United States moves to quash Defendant Jindal's subpoenas for witness testimony and "[d]ocuments and communications related to therapist pay rates in March, April, and May 2017 from three third party-therapist staffing companies" because they do not meet the requirements of Federal Rule of Criminal Procedure 17(c)(1) (Dkt. #82 at p. 3).  First, the Government contends that the documents sought are either irrelevant and inadmissible or, alternatively, have already been produced (Dkt. #82 at p. 6).  Second, the Government argues that the subpoenas lack the requisite specificity (Dkt. #82 at p. 7).  In response, Jindal argues that the subpoenas meet all of Rule 17's requirements (Dkt. #90).  The Court agrees with Jindal.

To overcome a motion to quash, the party seeking access to materials under a Rule 17(c) subpoena bears the burden of showing the subpoenaed document: (1) is relevant; (2) is admissible; and (3) has been requested with adequate specificity. *Arditti*, 955 F.2d at 345; *see also* FED. RULE CRIM. P. 17(c).  Applying this framework to the case, at this stage, the Court finds that Jindal has met his burden.[1]  *See id.*   Under Rule 17(c), relevancy requires the moving party to show a "sufficient likelihood" that the requested material is "relevant to the offenses charged in the indictment." *Arditti*, 955 F.2d at 345 (quoting *Nixon*, 418 U.S. at 700).  Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.  Similarly, admissibility requires a movant to make a "sufficient preliminary showing that [the requested material] contains evidence admissible with respect to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. Rules 17's admissibility requirement "does not

---

[1] Because the Court denies the United States' motion to quash on the grounds that it does not meet the requirements of Rule 17, the Court does not address Jindal's argument on whether the Government lacks standing to challenge the subpoenas.

require the court to make a determination that the requested documents are admissible—only that they may reasonably be used as admissible evidence." *United States v. Moultrie*, No. 3:08-CR-14, 2008 WL 3539745, at *3 (N.D. Miss. Aug. 8, 2008) (citing *Nixon*, 418 U.S. at 701–2).

Here, Count 1 of the Indictment charges Jindal with an alleged conspiracy to fix therapist pay rates (Dkt. #21).  More specifically, the Indictment alleges that "Jindal, Rodgers, and co-conspirators, among other things, provided and received non-public rates paid to PTs and PTAs; communicated about rate decreases; discussed and agreed to decrease rates paid to PTs and PTAs; [and] implemented rate decreases in accordance with the agreement reached. . . ." (Dkt. #21 § 12). The Indictment also alleges that Jindal "subsequently texted the owners of other therapist staffing companies to recruit additional competitors to join the conspiracy to collectively lower rates." (Dkt. #21 § 12(b)).  Here, the subpoenas call for witness testimony and documents that underly the factual basis for these allegations.  The Government argues that "information about these other entities' pay rates has no bearing on the existence of the alleged conspiracy" because "the Indictment contains no allegations about whether these other companies responded to Defendant Jindal's requests, whether they joined the conspiracy, or whether they subsequently lowered PT rates, (Dkt. #82 at p. 6).  However, the Indictment contains broad allegations regarding the Defendants and the Companies identified in the Indictment.  Thus, the Court finds that Jindal has met his burden to show a "sufficient likelihood" that the requested material is relevant.  As such, the Court finds that Jindal has also made an adequate showing that the documents may be admissible at trial.

Third, Jindal's requests in the trial subpoenas are specific.  A request is specific when the "description contains sufficient details to identify the particular materials sought and demonstrates a request for evidence, and not an improper attempt to expand discovery." *United States v.*

*Carriles*, 263 F.R.D. 400, 405 (W.D. Tex. 2009) (citing *Nixon*, 418 U.S. at 700).  Specificity serves to prevent a subpoena from being converted into a license for a "fishing expedition to see what may turn up." *Skilling*, 2006 WL 1006622, at *3 (internal citation omitted) (explaining the specificity requirement is intended to provide the subpoenaed party with enough knowledge about the documents being requested to lodge objections based on relevancy and admissibility).  Here, the subpoena requests are limited to a discrete subject matter—documents and communications related to the therapist pay rates.  Moreover, the requests limit the time frame for the documents— specifically, the requests are limited to March, April, and May 2017.  Accordingly, the subpoena's description contains sufficient details to identify the particular materials sought.  Thus, the Court finds that this is not a "fishing expedition" that would contravene Rule 17(c).

In sum, the Court finds that Jindal has met his burden of showing that the requests are relevant, admissible, and adequately specific. *See Arditti*, 955 F.2d at 345. Although the Court recognizes the Government's position that it would be extremely burdensome for the third parties to travel to the courthouse on April 4, 2022, the recipients themselves have not objected to the requests.  Further, the Court notes that Jindal "remains willing" to "negotiate the scope and timing of the documents productions to alleviate any potential burden" in that respect (see Dkt. #90 at p.4 n.1).  Moreover, the Court is also cognizant of Jindal's right to adequately present evidence that supports his defensive theory.

## CONCLUSION

It is therefore **ORDERED** that the United States' Motion to Quash Defendant Jindal's Subpoenas for Documents from Third Parties (Dkt. #82) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 1st day of April, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE