## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | NO. 4:20-CR-00358-ALM |
| | § | |
| NEERAJ JINDAL (1) | § | |
| | § | |

## DEFENDANT NEERAJ JINDAL'S MOTION
## FOR JUDGMENT OF ACQUITTAL OR FOR NEW TRIAL

Paul E. Coggins
Texas Bar No. 04504700
pcoggins@lockelord.com
Jennifer M. McCoy
Texas Bar No. 24089805
jennifer.mccoy@lockelord.com
**LOCKE LORD LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
T: (214) 740-8000
F: (214) 740-8800

**ATTORNEYS FOR**
**DEFENDANT NEERAJ JINDAL**

# TABLE OF CONTENTS

Page

I.      THE INDICTMENT ................................................................................................1

II.     THE GOVERNMENT'S CASE .............................................................................3

III.    THE JURY INSTRUCTIONS ................................................................................8

IV.     STANDARD OF REVIEW ...................................................................................10

        A.      The Rule 29 Standard ................................................................................10

        B.      The Rule 33 Standard ................................................................................11

V.      ARGUMENT AND AUTHORITIES ...................................................................12

        A.      The Jury Must Unanimously Agree Upon Each Element Through Which
                the Government Established Mr. Jindal Committed Count Three, as
                Charged in the Indictment ........................................................................12

        B.      The Government Failed to Prove the "Obstructive" Acts Alleged In the
                Indictment. ................................................................................................15

                1.      There is insufficient evidence to establish that Mr. Jindal aided and
                        abetted another individual's obstruction of the FTC investigation............16

                2.      There is insufficient evidence to establish Mr. Jindal lied to or
                        misled the FTC in connection with several statements alleged in
                        the Indictment. ...............................................................................16

                3.      There is insufficient evidence to establish Mr. Jindal deleted text
                        messages or other documents after given notice of the FTC's
                        investigation. ..................................................................................19

VI.     CONCLUSION .....................................................................................................20

# INDEX OF AUTHORITIES

**Page(s)**

## CASES

*United States v. Creech*,
  408 F.3d 264 (5th Cir. 2005) ...................................................................13

*Bronston v. United States*,
  409 U.S. 352 (1973).............................................................................18

*Schad v. Arizona*,
  501 U.S. 624 (1991).............................................................................12

*Stirone v. United States*,
  361 U.S. 212 (1960).............................................................................14

*Stirone v. United States*,
  80 S. Ct. 270 (1960).............................................................................15

*United States v. Meshack*, 225 F.3d 556 (5th Cir. 2000) ............................13

*United States v. Villegas*,
  494 F.3d 51316 (5th Cir. 2007) ............................................................13

*United States v. Acosta*,
  C 11-00182 CRB, 2012 WL 273709 (N.D. Cal. Jan. 30, 2012) ...........13

*United States v. Alston*,
  974 F.2d 1206 (9th Cir. 1992) ........................................................11, 12

*United States v. Bonds*,
  730 F.3d 890 (9th Cir. 2013) ................................................................13

*United States v. Charles*,
  313 F.3d 1278 (11th Cir. 2002) ............................................................11

*United States v. Fawley*,
  137 F.3d 458 (7th Cir. 1998) ................................................................13

*United States v. Fitzharris*,
  633 F.2d 416 (5th Cir .1980) ................................................................10

*United States v. Floresca*,
  38 F.3d 706 (4th Cir. 1994) ..................................................................15

*United States v. Ganji*,
    880 F.3d 760 (5th Cir. 2018) .................................................................10, 19

*United States v. Holley*,
    942 F.2d 916 (5th Cir. 1991) ...........................................................................13

*United States v. Kellington*,
    217 F.3d 1084 (9th Cir. 2000) .................................................................11, 12

*United States v. Kim*,
    472 F.3d 1055 (9th Cir.1999) ..........................................................................13

*United States v. Miles*,
    360 F.3d 472 (5th Cir. 2004) ...........................................................................10

*United States v. Moreno*,
    227 F. App'x 361, 362–63 (5th Cir. 2007) ....................................................13

*United States v. Pettigrew*,
    77 F.3d 1500 (5th Cir. 1996) ...........................................................................10

*United States v. Rivera*,
    295 F.3d 461 (5th Cir. 2002) ...........................................................................10

*United States v. Sarihifard*,
    155 F.3d 301 (4th Cir. 1998) ...........................................................................13

*United States v. Tipton*,
    90 F.3d 861 (4th Cir. 1996) .............................................................................13

*United States v. Ward*,
    747 F.3d 1184 (9th Cir. 2014) .........................................................................15

*Van Liew v. United States*,
    321 F.2d 674 (5th Cir. 1963) ...........................................................................11

## CONSTITUTION AND STATUTES

15 U.S.C. § 1 ...........................................................................................................1

18 U.S.C. § 2 ...........................................................................................................1

18 U.S.C. § 371 .......................................................................................................1

18 U.S.C. § 1505 .............................................................................1, 2, 8, 9, 10, 16

## OTHER AUTHORITIES

Fed. R. Civ. P. 33 .........................................................................................1, 11, 12

Fed. R. Crim. P. 29(c) ................................................................................................1, 10, 11, 12

Fed. R. Crim. P. 29(d)(1) ...........................................................................................................11

Fed. R. Crim. P. 31(a) ................................................................................................................12

Neeraj Jindal ("Mr. Jindal"), Defendant in the above-captioned case, by and through his attorneys of record and pursuant to Federal Rule of Criminal Procedure 29(c), hereby renews his Motion for Judgment of Acquittal following the jury's return of a guilty verdict as to Count Three of the First Superseding Indictment on April 14, 2022.  Alternatively, Mr. Jindal moves for a new trial as to Count Three pursuant to Federal Rule of Civil Procedure 33.  In support of his Motion, Mr. Jindal would respectfully show the Court that the government has failed to prove the essential elements of the crime of obstruction as alleged in the First Superseding Indictment beyond a reasonable doubt, particularly in light of the Court's refusal to provide a specific unanimity of theory instruction.

## I.    THE INDICTMENT

The government indicted Mr. Jindal in its first-ever wage-fixing conspiracy case on December 9, 2020.  [Dkt. No. 1].  In an attempt to buttress its wage-fixing allegations, the government also indicted Mr. Jindal with obstruction of the Federal Trade Commission's ("FTC") long-complete preliminary investigation into Mr. Jindal's March 2017 communications that formed the basis of the alleged wage fixing conspiracy.

On April 15, 2021, the government superseded its Indictment with the First Superseding Indictment (hereinafter the "Indictment") [Dkt. No. 21], which added John Rodgers ("Mr. Rodgers") as a defendant in this case.  The final four-count Indictment charged Mr. Jindal and Mr. John Rodgers with: (1) antitrust conspiracy: price fixing, violation of 15 U.S.C. § 1; (2) conspiracy to commit offense, violation of 18 U.S.C. § 371; (3) obstruction of proceedings before the Federal Trade Commission, violation of 18 U.S.C. § 1505 and § 2 (Mr. Jindal only); and (4) obstruction of proceedings before the Federal Trade Commission, violation of 18 U.S.C. § 1505 and § 2 (Mr. Rodgers only).

On April 14, 2022, following an eight-day trial, a jury acquitted the Defendants on Counts One, Two, and Four.  In so doing, the jury concluded that the government failed to prove that the Defendants engaged in a conspiracy to fix wages or obstruct the FTC's 2017 investigation, as alleged in the Indictment.  However, the jury returned a guilty verdict against Mr. Jindal on Count Three.  Therefore, this motion for acquittal focuses only on Count Three of the Indictment.

Count Three charges Mr. Jindal with violating 18 U.S.C. § 1505 by obstructing proceedings pending before the Federal Trade Commission ("FTC").    Although the Indictment focuses primarily on Counts One and Two, it generally alleges, in support of Count Three, that Mr. Jindal "corruptly endeavored to influence, obstruct, and impede" the FTC's preliminary investigation into the now-dismissed wage fixing allegations (which form the basis of Count One) "in or around April 2017, and continuing at least through in or around October 2017."  [Dkt. No. 21 ¶ 22].  The Indictment generally alleges that Mr. Jindal obstructed the FTC investigation in two ways:

> (a) . . . Jindal made false and misleading statements to the FTC, withheld and concealed information from the FTC, and made phone calls and sent text messages as part of his corrupt attempt to endeavor to influence, obstruct, and impede the FTC investigation; and
>
> (b) . . . Jindal aided and abetted another, specifically Rodgers, who corruptly endeavored to influence, obstruct, and impede the FTC investigation.

*Id* (emphasis added).

The Indictment goes on to allege that Mr. Jindal committed the foregoing violations through more than ten separate false or misleading statements, acts, and/or omissions to the FTC, including, but not limited to:

1.     Sending an email to the FTC in which he stated that he decided to make "rate cuts to some of [his] therapists based on a collective agreement with [his] office team";

2.      Deleting communications between himself, Mr. Rodgers, and the owners of other therapy staffing companies;

3.      Informing the FTC that "[n]o letters, emails, or phone calls ever took place on conducting any rate changes together or collectively as a contractive company";

4.      Withholding and concealing that he communicated with other therapy staffing company owners regarding pay rates;

5.      Testifying to the FTC that he did not know the pay rates of other therapy staffing companies;

6.      Providing the FTC with an incomplete list of "potential competitors" of Integrity;

7.      Sending an email to the FTC in which he asserted, "I will give you any info you need to prove that nothing at all is done collectively with any counterparts";

8.      Testifying to the FTC that he had "no idea" why he wrote to competing therapist staffing companies that he had Your Therapy Source ("YTS") "on board";

9.      Testifying to the FTC that he did not discuss with Mr. Rodgers whether YTS would lower its pay rates; and

10.     Withholding and concealing information that contradicts the assertions set forth above.

## II.      THE GOVERNMENT'S CASE

As the Court is aware, Mr. Jindal owned a physical therapy staffing company called Integrity Home Therapy ("Integrity") from 2013 to 2017.  Mr. Jindal purchased Integrity from Mr. Rodgers, who continued working with Integrity as a physical therapist and Clinical Director following the sale.

The evidence at trial (including certain joint stipulations between the parties) established that, in April 2017, the FTC began a preliminary investigation into text messages that Mr. Jindal and Mr. Rodgers exchanged with competitors of Integrity in March 2017.  The evidence further established that Mr. Jindal was aware of the FTC's investigation and, in connection therewith, provided voluminous documents and information to the FTC, both voluntarily and in response to

a Civil Investigative Demand received on August 11, 2017.  Mr. Jindal provided much of this information through voluntary email exchanges with Robert Canterman of the FTC Health Care Division's Bureau of Competition over the course of several months.  Additionally, the FTC interviewed Mr. Jindal under oath for several hours as part of an investigative hearing on September 15, 2017.

Throughout the eight-day trial of this case, the government admitted several lengthy email threads exchanged between Mr. Jindal and the FTC, as well as the entire 254-page transcript of Mr. Jindal's FTC testimony.  The government also admitted more than twenty emails between Mr. Jindal's former counsel, who Mr. Jindal retained midway through the FTC investigation, and the FTC.  In sum, the government introduced over 300 pages of statements and approximately six hours of testimony that Mr. Jindal provided in cooperation with the FTC's investigation from April to September 2017 – much of which the government characterized as intentionally false or misleading throughout the trial.

The government also called Special Agent Jeffrey Pollack to testify about the statements and representations that Mr. Jindal made to the FTC.[1] Through his testimony, Special Agent Pollack generally summarized the emails and testimony set forth above.  Special Agent Pollack even prepared, and the government admitted into evidence, what government's counsel described to the jury as "a summary of [Mr. Jindal's] obstructive conduct." The summary included 63 pages of statements Mr. Jindal made to the FTC, including, but not limited to the following:

---

[1] Although Special Agent Pollack was not involved in the FTC investigation, he testified that he reviewed portions of the FTC's investigation file in connection with his investigation into this subsequent criminal case.

```
11        Q.   What about with home health agencies,
12   how did you communicate with them?
13        A.   Mainly phone.
14        Q.   And with other therapist staffing
15   companies?
16        A.   Not a lot of communication, but if I
17   did it would be, I mean, I guess text.
```

***

```
19        Q.   Did you delete any documents
20   responsive to the CID or to the access letter
21   following receipt of the access letter?
22        A.   No.
```

***

```
18        Q.   Would it have just been PTA rates or
19   other rates?
20        A.   No, I think just PTA rates.
```

***

```
4         Q.   Do you know if John Rodgers did tell
5    Sheri about rate changes at Integrity after
6    they had been implemented?
7         A.   I don't know that answer.
```

Gov. Ex. 203.

Although several of the statements were ***not*** included in the Indictment as a basis for Count

Three, Special Agent Pollack testified that all of Mr. Jindal's statements to the FTC included in

Government's Exhibit 203 were false, misleading, or "obstructive" – thus suggesting they could

form the basis for the jury's verdict as to Count Three.  Tr. 1229:7-9.

Special Agent Pollack also testified about the number of phone calls and text messages

between Mr. Jindal and Mr. Rodgers, as reflected in their phone records, although Special Agent

Pollack had no personal knowledge of the substance of any such communications.  *See* Gov. Exs.

200-201.  Nonetheless, Special Agent Pollack testified to the jury – and the government reiterated in its closing arguments – that the phone records and other evidence established that Mr. Jindal intentionally deleted text messages in an attempt to obstruct the FTC's investigation.  Special Agent Pollack also suggested that Mr. Jindal sought to influence Mr. Rodger's FTC testimony when he sent Mr. Rodgers a text message during his FTC interview.    However, Special Agent Pollack  again admitted on cross-examination that he had no way of knowing what Mr. Jindal's text message said – instead, he and the government asked the jury to speculate as to the contents of Mr. Jindal's text message, which could "possibly" have pertained to the FTC investigation.

| 11:32:37 | 6 | Q. | And by the way, do you remember a series of questions |
| 11:32:40 | 7 | | that Mr. Lunder asked you on redirect where he said you |
| 11:32:42 | 8 | | don't know what the content of this message is but the |
| 11:32:45 | 9 | | content could have been call me? |
| 11:32:48 | 10 | A. | Yes, I do recall that. |
| 11:32:49 | 11 | Q. | And you answered "It's possible," right? |
| 11:32:51 | 12 | A. | It's a possibility. |
| 11:32:52 | 13 | Q. | And the content could have been you just won the |
| 11:32:55 | 14 | | lottery, couldn't it? |
| 11:32:56 | 15 | A. | Sure. |
| 11:32:58 | 16 | Q. | It could have been anything. |
| 11:32:59 | 17 | A. | Correct. |

Tr. 1521:6-17.

The government also painted several of Mr. Jindal's statements to the FTC as false or misleading through its cross-examination of his wife, Kajal Jindal, despite such statements not being included as a basis for Count Three in the Indictment.  For example, the government used Mrs. Jindal's cross-examination to suggest to the jury that Mr. Jindal testified falsely to the FTC about Mrs. Jindal's role at Integrity:

```
17  Q.  Mrs. Jindal, did you have any role in the company other
18  than answering questions regarding clinical care and
19  providing specific care for the patient as a PT?
20  A.  Sorry.  Say that one more time.  Any role besides --
21  Q.  Did you have any role in the company other than
22  answering questions regarding clinical care and providing
23  specific care for the patient as a PT?
24  A.  I felt like I did, yes.
25        MR. RENDELL:  Let's zoom in on 52, lines 6 through
```

```
 1  12, please.
 2  BY MR. RENDELL:
 3  Q.  Here the FTC asked your husband, "Does she have any
 4  role in the company other than answering questions
 5  regarding clinical care or providing specific care for the
 6  patient as a PT?"
 7        And he answered, under oath, "No.  She is mainly
 8  there to help with clinical questions that I would not be
 9  able to answer."
10        Did I read that correctly?
11  A.  You did.
```

Tr. 1903:17 – 1904:11.

In sum, to support its obstruction charge against Mr. Jindal, the government presented the jury with a "grab bag" of dozens, if not hundreds, of statements and omissions that Mr. Jindal allegedly made to the FTC throughout its months-long investigation into this matter – leaving each of the twelve jurors to parse through over 300 pages of emails and testimony to determine which

statement or omission he or she construed as intentionally false or misleading.  Because the government presented the jury with well over twelve such statements or omissions through the Indictment, trial testimony, and exhibits, it is possible that each juror ultimately based his or her verdict on a different statement or omission that Mr. Jindal made to the FTC, or through which he aided and abetted another's obstruction, thus violating Mr. Jindal's right to a unanimous jury verdict as to Count Three.

### III.    THE JURY INSTRUCTIONS

As explained in the Court's instructions on Count Three, Section 1505 "makes it a crime for anyone to corruptly endeavor to influence, obstruct, or impede the due and proper administration of the law under which any proceeding is being had before any department or agency of the United States."  Instr. [Dkt. 111]; *see also* 18 U.S.C. § 1505.   The Court's further instructions on the elements of Count Three were as follows:

> For you to find a defendant guilty of the crime charged in [Count Three] under the first means described for committing the crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: That there was a proceeding pending before any department of agency of the United States;
>
> *Second:* That the defendant knew of the pending proceeding;
>
> *Third:* That the defendant endeavored to influence, obstruct, or impede the due and proper administration of law in that proceeding; and
>
> *Four*: That the defendant's acts were done "corruptly." That is, the defendant acted with an improper purpose, personally or by influencing another, including ***making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information***.
>
> It is not necessary to show that the defendant was successful in achieving the forbidden objective, only that the defendant corruptly tried to achieve it in a manner in which the defendant knew was

likely to influence, obstruct, or impede the due and proper
administration of the law due to the natural and probably effect of
the defendant's actions.

Instr. [Dkt. 111] at pp. 29-30 (emphasis added).  Because the Indictment did not charge Mr. Jindal

with attempt, the third and fourth elements required the government to prove beyond a reasonable

doubt that Mr. Jindal actually committed a corrupt act or made a false or misleading statement

intended to influence, obstruct, or impede the FTC investigation.

Additionally, with regards to the aiding and abetting theory of Count Three, the Court

instructed the jury that it must find the following beyond a reasonable doubt:

> ***First:*** That the offense of corruptly endeavoring to influence,
> obstruct, or impede the due and proper administration of the law
> under which any pending proceeding is being had before any
> department or agency of the United States was committed by the
> other defendant;
>
> ***Second:*** That the defendant associated with the criminal venture;
>
> ***Third:*** That the defendant purposefully participated in the criminal
> venture; and
>
> ***Fourth***: That the defendant sought by action to make the venture
> successful.

Instr. [Dkt. 111] at pp. 30-31.

The jury instructions and verdict form did not include reference to any particular false or

misleading statements; withheld, concealed, altered or destroyed information; or any other corrupt

acts alleged in the Indictment as a basis for Count Three.  Indeed, The Court denied Defendants'

requests for a unanimity of theory instruction as to Counts Three and Four, as well as Defendants'

requests for a special verdict form, which would have required the jury to indicate which false or

misleading statement or other corrupt act by Mr. Jindal the jury ***unanimously*** found to have

violated 18 U.S.C. § 1505.  Rather, the Court instructed the jurors that they may convict Mr. Jindal

on Count Three so long as they find that he violated 18 U.S.C. § 1505 by *either* of the means alleged by the government (*i.e.,* directly obstructing or aiding and abetting another in obstructing the FTC investigation).  Unlike the specific unanimity instruction provided for Count Two, the Court did not instruct the jury that it must unanimously agree on the facts or elements underlying Count Three.

As a result, the jury was not required to be unanimous as to one or more statements, omissions, or acts upon which their verdict for Count Three rested.  Although the jury was instructed that all twelve members had to agree Mr. Jindal obstructed the FTC investigation in order to return a guilty verdict, the instructions left jurors free to reach a guilty verdict by each relying upon wholly different statements, omissions, or acts that Mr. Jindal took throughout the FTC's months' long investigation.

## IV.     STANDARD OF REVIEW

### A.     The Rule 29 Standard

In evaluating whether the evidence produced at trial was sufficient to support a conviction as to a certain count, the standard of review is whether a rational jury, viewing the evidence in the light most favorable to the prosecution, could have unanimously found the essential elements of the offense to be satisfied beyond a reasonable doubt.  *See, e.g., United States v. Rivera*, 295 F.3d 461, 466 (5th Cir. 2002); *United States v. Miles*, 360 F.3d 472, 478, 483 (5th Cir. 2004) (vacating a jury conviction when "a rational jury could not find" an essential element of the crime").  Nevertheless, "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018) (citing *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996)).  Although the jury may make factually based inferences, "a conviction cannot rest on an unwarranted inference, the determination of which is a matter of law." *United States v. Fitzharris*, 633 F.2d 416, 422 (5th

Cir. 1980).   Where the government relies on circumstantial evidence, the inferences drawn therefrom must be reasonable and not speculative. *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002); *see also Van Liew v. United States*, 321 F.2d 674, 679 (5th Cir. 1963) (In acquitting on perjury charge, Fifth Circuit holds that the "Government's proof must be by substantial evidence excluding to the satisfaction of the jury every other hypothesis than that the Defendant in testifying as he did purposefully misstated the fact knowing it to be false and untrue.").

## B.    The Rule 33 Standard

If a district court grants a judgment of acquittal, it "must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29(d)(1) (emphasis added).

Under Rule 33, which governs motions for a new trial, a district court possesses a power to scrutinize and set aside a jury verdict much broader than the Rule 29 power to grant a motion for judgment of acquittal. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000). Unlike under Rule 29, a trial court deciding a Rule 33 motion is not "obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *Id*. If the court determines after weighing the evidence that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, and submit the issues for determination by another jury." *Id*. (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

A "court of appeals will only rarely reverse a district judge's grant of a defendant's motion for a new trial, and then only in egregious cases." *United States v. Alston*, 974 F.2d 1206, 1211-1212 (9th Cir. 1992). In *Kellington*, the court affirmed the district court's grant of a new trial, deferring to the trial judge's "evaluation of the testimony at trial (especially [the defendant's)" and

its determination that "there was no direct evidence of [the defendant's] mental state." 217 F.3d at 1099, 1101. Similarly, in *Alston*, the Ninth Circuit noted that "[a]lthough the jury apparently chose to believe the government's version of events, a reasonable trier of fact could have come out the other way" in light of the fact that "[t]he [defendants] offered alternative explanations for almost everything the government presented." 974 F.2d at 1212-13. The Court deferred to the district judge's "determin[ation] that the evidence weighed heavily against the verdict" with regard to the requisite *mens rea* for the charged conspiracy. *Id*. at 1213.

When a trial judge concludes that the evidence was insufficient to convict as a matter of law, that same judge must necessarily conclude that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* at 1212. For all the reasons why Mr. Jindal is entitled to acquittal under Rule 29, he is alternatively entitled to a new trial under Rule 33. Thus, the Court should enter a conditional order for a new trial under Rule 33 as well as a directed verdict under Rule 29.

## V.    ARGUMENT AND AUTHORITIES

### A.    The Jury Must Unanimously Agree Upon Each Element Through Which the Government Established Mr. Jindal Committed Count Three, as Charged in the Indictment.

There is no general requirement of jury unanimity "on the preliminary factual issues which underlie the verdict." *Schad v. Arizona*, 501 U.S. 624, 632 (1991). However, in certain types of cases, particularly cases involving multiple instances of an alleged offense, a specific unanimity instruction is necessary to prevent a violation of a defendant's Sixth Amendment constitutional right to a unanimous jury verdict. *See also* FED. R. CRIM. P. 31(a) (requiring unanimous verdict). This specific unanimity instruction is warranted "when there is a genuine risk of juror confusion or [a risk] that a conviction could result from different jurors having concluded that the defendant committed quite different acts within those of a prescribed set or among multiple means of

violating a statute." *United States v. Tipton*, 90 F.3d 861, 885 (4th Cir. 1996); *see also United States v. Creech*, 408 F.3d 264, 268 (5th Cir. 2005); *United States v. Holley*, 942 F.2d 916 (5th Cir. 1991); *United States v. Meshack*, 225 F.3d 556, 579–80 (5th Cir. 2000); *United States v. Villegas*, 494 F.3d 513, 515–16 (5th Cir. 2007); *United States v. Moreno*, 227 F. App'x 361, 362–63 (5th Cir. 2007); *United States v. Lyons*, 472 F.3d 1055, 1068 (9th Cir. 2007) (quoting *United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir. 1999) (specific unanimity instruction required if there is "'genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts'"); *United States v. Acosta*, C 11-00182 CRB, 2012 WL 273709, at *11 (N.D. Cal. Jan. 30, 2012).

Many of the cases where courts have found a specific unanimity instruction necessary deal with cases similar to the one at hand, wherein the government alleged multiple instances of false statements or perjury in a single indictment.[2] *See, e.g., United States v. Bonds*, 730 F.3d 890, 899 (9th Cir. 2013) ("The jury was instructed correctly that to convict [for obstruction of justice], it had to agree unanimously on which statement or statements qualified as intentionally evasive, false, or misleading."); *United States v. Sarihifard*, 155 F.3d 301, 310 (4th Cir. 1998) (stating, in the context of a perjury prosecution involving numerous allegedly false statements, that "[o]ften, a trial judge will have to provide a special unanimity instruction in order to prevent confusion"); *United States v. Fawley*, 137 F.3d 458, 470-72 (7th Cir. 1998) (reversing perjury conviction because proposed instruction that the jury must not convict unless each juror "agree[s], unanimously, that one particular answer is false" properly reflects the law). While it is settled law that the jury need only find one of the alleged instances to be false, not all of the charged instances,

---

[2] The analogy to perjury cases in which courts found specific unanimity theory instructions warranted is especially apt in this case, as the gravamen of the obstruction count against Mr. Jindal is his allegedly false testimony provided under oath to the FTC, and such testimony could just as easily form the basis of a perjury rather than obstruction charge.

the jury does need to unanimously agree upon the facts, including at least one false instance, to satisfy the constitutional requirement of a unanimous verdict. Specific unanimity instructions can solve a potential problem if all jurors unanimously agreed that at least one statement was false, but did not agree on the same statement.

In this case, there was a genuine possibility of jury confusion and that a conviction occurred despite disagreement as to which statements, omissions, or acts by Mr. Jindal were false or misleading, because the government urged that obstruction was committed on the basis of no fewer than ten different statements or omissions, as well as through Mr. Jindal's aiding and abetting of another.  Because no specific unanimity instruction was given to the jury on Count Three, the Court has no way of knowing whether the jury agreed that all of the statements were false or just one of them, or if, for example, some jurors agreed that a particular statement set forth in Mr. Jindal's FTC testimony was false and the rest agreed that one of the many emails that Mr. Jindal or his former attorney sent to the FTC contained a misleading omission.

Because no specific unanimity instruction was given here (and there is insufficient evidence to support each and every theory the government alleged or presented to the jury in support of Count Three), the interests of justice require the Court to enter a judgment of acquittal or hold a new trial as to Count Three.

This issue is exacerbated by the fact that, as set forth above, the government alleged and characterized multiple statements and/or omissions by Mr. Jindal as "false," "misleading," and "obstructive" despite such statements and/or omissions not being included as a basis for Count Three of the Indictment.  "[I]t has [long] been the rule that after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Stirone v. United States*, 361 U.S. 212, 215-16 (1960). Because the Fifth Amendment guarantees the right to

indictment by grand jury, reversal is required where a jury instruction "constructively amended the indictment by permitting the defendant to be convicted for conduct not alleged" therein. *United States v. Ward*, 747 F.3d 1184, 1191 (9th Cir. 2014); *United States v. Floresca*, 38 F.3d 706, 710 (4th Cir. 1994).

As explained above, a corruptly made false or misleading statement, omission, or other act is a necessary element to Count Three.  On the facts presented to the jury in this case, "we simply cannot know the basis for the [obstruction] conviction," which "might have been based on the conduct charged in the indictment," for example, the competition list Mr. Jindal provided to the FTC, "[b]ut could just as easily have been based on uncharged conduct," such as Mr. Jindal's alleged mischaracterization of Mrs. Jindal's role at Integrity during his FTC testimony, or his testimony that Integrity only discussed the rates of physical therapy assistants (and not, as the government argued, physical therapists) with its competitors.  *Ward*, 747 F.3d at 1192 (citing *Stirone*, 361 U.S. at 217).

Accordingly, there is absolutely no question that different jurors could, and likely would, reach different conclusions as to what specific statement, omission, or act constitutes obstructive conduct in this matter, thereby undermining the requisite unanimity requirement.  Because, based on the facts and instructions presented to the jury, we cannot guarantee that the jury ***unanimously*** agreed upon a particular statement, omission, or other corrupt act ***charged in the Indictment*** as their basis for convicting Mr. Jindal on Count Three, a reversal of that conviction is necessary.

**B.**      **The Government Failed to Prove the "Obstructive" Acts Alleged In the Indictment.**

As explained above, the government alleged dozens of "obstructive" acts, statements, and omissions to the FTC throughout their Indictment and case against Mr. Jindal.  However, the government failed to produce sufficient evidence to support such allegations, any of which may have formed the basis of one or more of the jurors' verdicts on Count Three.

1.    There is insufficient evidence to establish that Mr. Jindal aided and abetted another individual's obstruction of the FTC investigation.

Perhaps most obviously, the government produced insufficient evidence to support its theory that Mr. Jindal "aided and abetted" Mr. Rodgers in obstructing the FTC investigation. Indeed, the government's case on this point was comprised solely of conjecture and speculation, as Special Agent Pollack admitted again and again on the witness stand. Nonetheless, the jury instruction on Obstruction of Proceedings Before the Federal Trade Commission merely states that the jurors may convict Mr. Jindal of Count Three so long as they find that he violated 18 U.S.C. § 1505 by *either* of the two primary means alleged by the government – *i.e.*, personally misleading the FTC through a false statement or other act or aiding and abetting another in misleading the FTC. Because the instruction does not require the jury's finding on this point to be unanimous, it is possible that one or more jurors rested their guilty verdict on the government's argument that Mr. Jindal aided and abetted Mr. Rodgers' attempted obstruction of the FTC by, among other things, sending him a text message during his FTC testimony – a theory that the government reiterated throughout trial and in closing arguments. However, this outcome is clearly not supported by sufficient evidence, as demonstrated by, among other things, Mr. Rodgers' acquittal on Count Four (*i.e.*, the obstruction charge against him).

2.    There is insufficient evidence to establish Mr. Jindal lied to or misled the FTC in connection with several statements alleged in the Indictment.

Additionally, the government provided insufficient evidence to support all of the statements, acts, or omissions it alleges that Mr. Jindal perpetrated directly in order to obstruct the FTC investigation. For example, the government alleged in its Indictment and at trial that Mr. Jindal lied to the FTC when he testified that he "decided to administer rate cuts to some of [Integrity's] therapists based on a collective agreement with [his] office team." Gov. Ex. 203. However, the evidence presented at trial actually *supports* Mr. Jindal's testimony and, in any case,

16

is insufficient for a jury to unanimously find beyond a reasonable doubt that Mr. Jindal intentionally lied to or misled the FTC when he made this statement.

The evidence presented at trial clearly establishes that Mr. Jindal, Mrs. Jindal, Mr. Rodgers, and Angie Sudduth ("Ms. Sudduth") comprised Integrity's so-called "office team."  The evidence also established that Mr. Jindal sought the input of each of the three other members of Integrity's office team when deciding to cut certain therapists rates in March 2017.  Indeed, Government's Exhibit 89 is one of the emails through which Mr. Jindal solicits such input:[3]

**From:** "Integrity - Neeraj" <neeraj@integrityhometherapy.com>
**To:** "'Kajal'" <kajal@integrityhometherapy.com>, "'John Rodgers'" <john@integrityhometherapy.com>, <info@integrityhometherapy.com>
**Subject:** FW: Items requested
**Sent:** Tuesday, March 14, 2017 5:24:48 PM
**Attachment:** {50337923-ff87-428f-8109-0f01048afbcc}_HHL16014.2_special-issue_WEB.pdf
**Attachment:** SKM_C454e17031414470.pdf
I will have something ready by tonight for you to read as we roll out info to our staff.  I have identified what therapists we need to target first for the reduction in rates.  Of course I want all three of you to give feedback.

Although Ms. Sudduth testified that, at the time of trial, she did not recall receiving government's Exhibit 89, there is no evidence whatsoever to suggest that Mr. Jindal did not send the email seeking her input or objection to the rate cuts (or that he did not consider her input or lack of an objection to his email in implementing the rate cuts for Integrity).

Additional evidence in this case clearly establishes that Mr. Jindal discussed the rate cuts with the other two members of Integrity's office team – Mrs. Jindal and Mr. Rodgers – before the cuts went into effect in April 2017.  Indeed, Mrs. Jindal testified that, in her capacity as a Clinical Director and part owner of Integrity, she discussed the performance and workload of certain therapists with Mr. Jindal at length in order to help him decide whose rates to cut, and by how much, before helping Mr. Jindal craft the message relaying the cuts to the effected therapists.  *See*

---

[3] According to Ms. Sudduth's trial testimony, she monitored the third address included in Mr. Jindal's email (*i.e.*, info@integrityhometherapy.com).

Gov. Ex. 24.  Moreover, the evidence makes clear that the cuts were not based on any agreement between Integrity and any other physical therapy staffing company.

Thus, there is insufficient evidence for a jury to have found beyond a reasonable doubt that Mr. Jindal corruptly lied to or misled the FTC when he testified that he discussed and collectively agreed with members of his office team to lower the pay rates of certain therapists in March or April 2017.

Similarly, there is insufficient evidence for a jury to have unanimously found that Mr. Jindal corruptly lied to or misled the FTC when he stated in a May 8, 2017 email to Mr. Canterman that "nothing was done collectively with [Mr. Jindal's] counterparts" (*i.e.*, the owners of other therapy staffing companies).  *See* Indict. ¶20(c).  Indeed, the evidence in this case establishes (as does the jury's verdict acquitting the Defendants of the alleged wage fixing conspiracy) that Mr. Jindal's competitors took no actions whatsoever based on the text messages he sent on March 10, 2017 – making Mr. Jindal's statement to the FTC true, accurate, and anything but misleading.  *See, e.g., Bronston v. United States*, 409 U.S. 352 (1973) (establishing literal truth doctrine).[4]  More specifically, the evidence presented at trial establishes that Mr. Jindal unilaterally sent the text messages at issue and, to his knowledge, each of the four recipients ignored or declined his proposal.[5]  In other words, Mr. Jindal and the recipients of his text messages took no joint or

---

[4] If this Court agrees that one or more of Mr. Jindal's alleged obstructive statements was erroneously brought to the jury due to the literal truth or fundamental ambiguity doctrines, or for lack of substantial evidence at trial as discussed herein, then the Court should acquit on Count Three or order a new trial with such allegations removed, because they could not have been statements that the jury reasonably and unanimously agreed were false. The government chose to file only one count of obstruction encompassing all of the alleged false statements and omissions. It could have chosen to proceed on each of the statements individually in separate counts, in which case it would be clear which statement or statements the jury believed was false and which they did not.

[5] Each of the four recipients of Mr. Jindal's March 2017 text messages, Tuan Le, Kimberly Grimmett, Richard Smith, and Nathan Foreman, testified at trial that they took no action whatsoever in connection with the text messages (with the exception of Mr. Smith's reporting of the text messages to the FTC, which was not done "collectively" with Mr. Jindal in any sense).

collective action whatsoever based on those text messages, and the allegations set forth in Paragraph 20(c) of the Indictment cannot form the basis of the jury's verdict as to Count Three.

      3.    <u>There is insufficient evidence to establish Mr. Jindal deleted text messages or other documents after given notice of the FTC's investigation.</u>

As further discussed above, the government's attorneys and Special Agent Pollack repeatedly accused Mr. Jindal of deleting his text messages with Mr. Rodgers and others in order to mislead the FTC in its 2017 investigation.  In so doing, the government suggested that Mr. Jindal deleted such communications following receipt of the FTC's voluntary access letter on April 1, 2017 – which is when Mr. Jindal first became aware of the FTC investigation.  Although the government's attorneys focused heavily on this allegation, the government's evidence was insufficient to establish that Mr. Jindal "corruptly" deleted any text messages, communications, or other documents following April 1, 2017 – much less that any such communications or documents related to the FTC investigation.  Indeed, Mr. Pollack admitted during his cross-examination that the government "[did not] have any hard evidence" Mr. Jindal deleted text messages or other communications following April 1, 2017 and, moreover, Special Agent Pollack "[did not] know the content of any of the messages" that Mr. Jindal may or may not have deleted.  Tr. 1530:12-1531:1

Nonetheless, the government doubled down on this allegation in closing arguments, wholly ignoring the testimony and other evidence establishing that both defendants regularly and frequently deleted their work-related text messages as part of their common practice, which directly contradicts the government's assertion that Mr. Jindal deleted documents in order to obstruct the FTC's investigation.  In so doing, the government asked the jury to rest its verdict "on mere suspicion, speculation, or conjecture," *Ganji*, 880 F.3d at 767, and the verdict must, therefore, be reversed.

## VI.    CONCLUSION

Based on a review of the government's evidence and applicable case law, the evidence is insufficient for the jury to have unanimously agreed that Mr. Jindal obstructed justice through the acts alleged in the Indictment, particularly in light of the lack of unanimity instruction as to Count Three. Accordingly, the Motion for Judgment of Acquittal should be granted in all respects.  In the alternative, the Court should grant a new trial on Count Three of the Indictment, as the interests of justice so require.

Date: May 16, 2022                                      Respectfully submitted,

                                                        */s/ Paul E. Coggins*
                                                        Paul E. Coggins
                                                        Texas Bar No. 04504700
                                                        pcoggins@lockelord.com
                                                        Jennifer M. McCoy
                                                        Texas Bar No. 24089805
                                                         jennifer.mccoy@lockelord.com
                                                        **LOCKE LORD LLP**
                                                        2200 Ross Avenue, Suite 2800
                                                        Dallas, Texas 75201
                                                        T: (214) 740-8000
                                                        F: (214) 740-8800

                                                        **ATTORNEYS FOR
                                                        DEFENDANT NEERAJ JINDAL**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify, pursuant to E.D. Tex. Crim. L.R. 47(a)(3), that I conferred by email with counsel for the United States, and confirmed that the United States opposes the relief sought in this Motion.

                                         */s/ Jennifer M. McCoy*
                                         Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document has been filed electronically and a copy served on all counsel of record who have consented to electronic service via the Court's CM/ECF system on this 16th day of May 2022.

                                         */s/ Jennifer M. McCoy*
                                         Counsel for Defendant