# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | No. 4:20-CR-00358-ALM |
| | § | Judge Mazzant |
| | § | |
| NEERAJ JINDAL (1) | § | |
| | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Neeraj Jindal's Motion for Judgment of Acquittal or for New Trial (Dkt. #137). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

On December 12, 2020, the Government filed an Indictment against Defendant Neeraj Jindal ("Jindal") (Dkt. #1). On April 15, 2021, the Government filed the First Superseding Indictment (hereinafter "Indictment"), adding John Rodgers ("Rodgers") as a defendant (Dkt. #21). The four-count Indictment charged Jindal and Rodgers with: (1) antitrust conspiracy: price fixing, violation of 15 U.S.C. § 1; (2) conspiracy to commit offense, violation of 18 U.S.C. § 371; (3) obstruction of proceedings before the Federal Trade Commission ("FTC"), violation of 18 U.S.C. §§ 1505 and 2 (Jindal only); and (4) obstruction of proceedings before the Federal Trade Commission, violation of 18 U.S.C. §§ 1505 and 2 (Rodgers only) (Dkt. #21). Following an eight-day trial, the jury acquitted the Defendants on Counts One, Two, and Four. However, the jury found Defendant Jindal guilty of Count Three of the Indictment—violating § 1505 by obstructing proceedings before the FTC.

## I.      Count Three of the Indictment

Count Three of the Indictment charged Jindal with violating 18 U.S.C. § 1505 by obstructing proceedings pending before the FTC (Dkt. #21).  More specifically, mirroring the statutory text, Count Three alleged that Jindal "corruptly endeavored to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before a department or agency of the United States" (Dkt. #21 ¶ 22).  Count Three further alleged that Jindal committed the violation by "the following means:"

> (a) . . . ma[king] false and misleading statements to the FTC, withh[olding] and conceal[ing] information from the FTC, and mak[ing] phone calls and sen[ding] text messages as part of his corrupt endeavor to influence, obstruct, and impede the FTC investigation; and
> (b) . . . aid[ing] and abett[ing] another, specifically Rodgers, who corruptly endeavored to influence, obstruct, and impede the FTC Investigation

(Dkt. #21 ¶ 22).  The Indictment then specified several "example[s]" of these means (Dkt. #21 ¶ 23).

## II.     The Evidence

From April 4, 2022, to April 14, 2022, the Court held a jury trial.  The evidence at trial showed that Jindal owned a physical therapist staffing company called Integrity Home Therapy ("Integrity") from 2013 to 2017.  Jindal purchased Integrity from his co-defendant, Rodgers, who continued to work as a physical therapist with Integrity.

The evidence further showed that on March 10, 2017, at 1:36 PM, Rodgers texted Sheri Yarbray ("Yarbray"), owner of Your Therapy Source ("YTS"), a competitor of Integrity, "I think we're going to lower PTA rates to $45" (Dkt. #142, Exhibit 1 at p. 1).  Yarbray replied, "Yes I agree" and "I'll do it with u" (Dkt. #142, Exhibit 1 at p. 1).  The Government introduced evidence that the same afternoon that Rodgers texted Yarbray, Jindal texted four additional competitors of Integrity: (1) Tuan Le ("Le"), owner of Dwell Therapy; (2) Nathan Foreman ("Foreman"), owner

of Foreman Therapy Services; (3) Kimberly Grimmett, owner of Innovative Therapy Resources; and (4) Shay Smith, owner of Therapy Heroes.  In these texts, Jindal stated: "I am reaching out to my counterparts about lowering PTA rates to $45. What are your thoughts if we all collectively do it together?" "I have YTS on board"[1] (Dkt. #142, Exhibit 1 at pp. 9–13).

At trial, the Government introduced evidence that Shay Smith reported Jindal's text to the FTC (Dkt. #142, Exhibit 1 at p. 14).  The evidence further established that, in April 2017, the FTC began a preliminary investigation into Jindal's and Rodgers' March 2017 text messages with competitors of Integrity and that Jindal was aware of the FTC's investigation (Dkt. #142, Exhibit 1 at p. 16).  The Court took judicial notice that the FTC's subsequent investigation was a proceeding pending before an agency of the United States (Dkt. #130 at pp. 166–67).

The Government also introduced evidence that, in response to a request for voluntary information from the FTC, (Dkt. #142, Exhibit 1 at p. 16), Jindal concealed information and made several false and misleading statements to the FTC.  For example, on April 28, 2017, in an email to the FTC, Jindal stated: "To my recollection I reached out to these 3 (not sure if all 3) businesses owners[—]" "Tuan at Dwell," "Kim at Innovative" and "Shay at Therapy  Heroes" (Dkt. #142, Exhibit 6).  Notably, Jindal did not list Foreman, owner of Foreman Therapy Service (Dkt. #142, Exhibit 6).  In the same email, Jindal stated: "I decided to administer rate cuts to some of my therapists based on a collective agreement with my office team" (Dkt. #142, Exhibit 6).

Further, the evidence at trial showed that on the same day, April 28, 2017, in response to a voluntary request from the FTC for a list of Integrity's competitors, Jindal sent the FTC a typewritten list of competitors (Dkt. #142, Exhibit 9 at p. 6).  Notably, the list did not include YTS or Foreman—two competitors that he had direct or indirect communications with about lowering

---

[1] Two of the texts also stated that Foreman was also "on board" (Dkt. #142, Exhibit 1 at pp. 12–13).  In one of the texts, Jindal also stated that he was "asking Dwell" (Dkt. #142, Exhibit 1 at p. 11).

PTA rates (Dkt. #142, Exhibit 9 at p. 6).  Almost five months later, after the FTC served Integrity with a Civil Investigative Demand, Jindal's counsel produced a handwritten list of competitors to the FTC (Dkt. #142, Exhibit 9 at p. 7).  This time, the list included both YTS and Foreman as competitors (Dkt. #142, Exhibit 9 at p. 7).  The companies included on both lists appeared in the same order on each, indicating that that typewritten list that Jindal had produced earlier was based on the handwritten list (Dkt. #142, Exhibit 9 at pp. 6–7).

As well, the Government introduced evidence that on September 15, 2017, Jindal made several false and misleading statements to the FTC during his investigational hearing (Dkt. #142, Exhibit 49; Dkt. 142, Exhibit 50).  For instance, the FTC asked Jindal why he texted Le that "YTS was on board," and Jindal replied, "I don't, you know, no reason why I put that. I have no idea what YTS is doing" (Dkt. #142, Exhibit 49 at p. 35).  However, the evidence at trial showed this response was misleading as Jindal failed to inform the FTC about Rodgers' messages with the owner of YTS.  Further, Jindal testified at the FTC hearing that when he sent the text messages to his competitors, his intent was only to find out what his competitors were paying their workers (Dkt. #142, Exhibit 49 at p. 34).  And when asked whether he had information on Grimmett's rates because he previously attempted to acquire her company, Jindal doubled down on his explanation, testifying, "No, we didn't go down that far on the rates when I was trying to acquire her" (Dkt. #142, Exhibit 49 at p. 56).  However, the Government presented evidence at trial that Jindal's explanations were false and contrary to Grimmett's trial testimony.

### III.    The Jury Instructions

At trial, Jindal proposed a "unanimity of theory" jury instruction for Count Three. More specifically, Jindal's proposed instruction listed several of the Indictment's examples of the means by which Jindal obstructed the FTC investigation and instructed the jury that they all "must agree

that the same one has been proved" (Dkt. #78 at pp. 22–23).  However, the Court denied Jindal's request for a "unanimity of theory" instruction, and Jindal objected (Dkt. #131 at p. 243).  Thus, the jury instructions and verdict form did not include reference to any particular false or misleading statements; withheld, concealed, altered, or destroyed information; or any other corrupt acts alleged in the Indictment.

Instead, the jury instructions for Count Three began by explaining that 18 U.S.C. § 1505 "makes it a crime for anyone to corruptly endeavor to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States" (Dkt. #111 at p. 28).  The Court further instructed the jury that Count Three charged Jindal with violating § 1505  by two means (*i.e.* directly obstructing and aiding and abetting another in obstructing the FTC investigation) and that if the jury found Jindal violated 18 U.S.C. § 1505  by either of the two means, then they may convict on Count Three (Dkt. #111 at p. 29).  As to the elements of Count Three, the Court instructed the jury as follows:

> *First*: That there was a proceeding pending before any department or agency of the United States;
>
> *Second*: That the defendant knew of the pending proceeding;
>
> *Third*: That the defendant endeavored to influence, obstruct, or impede the due and proper administration of the law in that proceeding; and
>
> *Fourth*: That the defendant's acts were done "corruptly," that is, the defendant acted with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information

(Dkt. #111 at pp. 29–30).

Additionally, as to the aiding and abetting theory of Count Three, the Court instructed the jury that it must find the following beyond a reasonable doubt:

*First*: That the offense of corruptly endeavoring to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States was committed by the other defendant;

*Second*: That the defendant associated with the criminal venture;

*Third*: That the defendant purposefully participated in the criminal venture; and

*Fourth*: That the defendant sought by action to make that venture successful.

(Dkt. #111 at p. 31).

On May 16, 2022, Jindal filed the present motion (Dkt. #137).  On May 31, 2022, the Government filed its response (Dkt. #138).  On June 7, 2022, Jindal filed his reply (Dkt. #141).

## LEGAL STANDARD

### I.    Rule 29

A Rule 29 motion for judgment of acquittal "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998).  The issue is "whether, viewing the evidence in the light most favorable to the verdict, a rational [finder of fact] could have found the essential elements of the offense charged beyond a reasonable doubt." *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009)).  "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001).  The factfinder is "free to choose among reasonable constructions of the evidence," and "it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id*. (quotations and citations omitted).

A defendant bears a heavy burden in meeting this high standard. *United States v. Achobe*, 560 F.3d 259, 263 (5th Cir. 2008) ("The standard for a sufficiency claim is high."). Consequently, reviewing courts are "highly deferential to jury verdicts." *United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010) ("We review a jury verdict under a 'highly deferential' standard."). That deference is underscored by the Fifth Circuit's frequent refrain: "We stress that 'all reasonable inferences and credibility choices must be made in favor of the jury verdict.'" *United States v. Deville*, 278 F.3d 500, 505 (5th Cir. 2002) (internal citation omitted); *see also United States v. Carter*, 953 F.2d 1449, 1456 (5th Cir. 1992) (noting the court must give "the government the benefit of all reasonable inferences and credibility choices"). Thus, a court cannot grant a judgment of acquittal unless it concludes, after viewing the evidence through the lens of this deferential standard, that a rational jury would necessarily have had to entertain a reasonable doubt as to the defendant's guilt. *See United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979).

## II.     Rule 33

Rule 33 provides that, on request, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a). The decision to grant or deny a motion for new trial pursuant to Rule 33 is well within the Court's discretion. *E.g.*, *United States v. Wall*, 389 F.3d 457, 465 (5th Cir. 2004) (citing *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997)). "Generally, motions for new trial are disfavored and must be reviewed with great caution." *United States v. Smith*, 804 F.3d 724, 734 (5th Cir. 2015). The Court typically "should not grant a motion for new trial unless there would be a miscarriage of justice . . . ." *Wall*, 389 F.3d 466 (citation omitted). As such, a new trial is proper only where the defendant's "substantial rights" have been harmed—either based on a single error or the cumulative effect of multiple errors. *United States v. Bowen*, 799 F.3d 336, 349 (5th Cir. 2015).

## ANALYSIS

Jindal argues he is entitled to acquittal under Rule 29 or, alternatively, a new trial under Rule 33 for two principal reasons.  First, Jindal argues that his Sixth Amendment right to a unanimous jury verdict was violated because "the Court did not instruct the jury that it must unanimously agree on the facts or elements underlying Count Three" (Dkt. #137 at p. 17).  More specifically, according to Jindal, "because the [G]overnment urged that obstruction was committed on the basis of no fewer than ten different statements or omissions, as well as through [] Jindal's aiding and abetting of another[,]" "there was a genuine possibility of jury confusion and that a conviction occurred despite disagreement as to which statements, omissions, or acts by [] Jindal were false or misleading" (Dkt. #137 at p. 19).  Second, Jindal contends that there is "insufficient evidence to support each and every theory the [G]overnment alleged or presented to the jury in support of Count Three" (Dkt. #137 at p. 9).  In response to Jindal's arguments, the Government asserts that "[t]he Court's jury instructions were correct, and a rational trier of fact could find— and did find—that the evidence established Jindal's guilt beyond a reasonable doubt" (Dkt. #138 at p. 4).  The Court considers Jindal's arguments in turn.

### I.      "Unanimity of Theory" Instruction

As noted, Jindal first contends that his conviction should be reversed because no specific unanimity instruction was given on Count Three.  According to Jindal, "[a]lthough the jury was instructed that all twelve members had to agree [] Jindal obstructed the FTC investigation in order to return a guilty verdict, the instructions left jurors free to reach a guilty verdict by each relying on wholly different statements, omissions, or acts that [] Jindal took throughout the FTC's months' long investigation" (Dkt. #137 at p. 15).  In response, the Government asserts that the Court properly rejected Jindal's proposed specific unanimity instruction for two reasons (Dkt. #138 at p.

10).  First, the Government argues that "a general unanimity instruction is ordinarily sufficient, and it was in this case" (Dkt. #138 at p. 10).  Second, the Government contends that "the unanimity requirement only 'extends to every element of the offense'" (Dkt. #138 at p. 10).

A "jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element." *Richardson v. United States*, 526 U.S. 813, 817 (1999); *see also* FED.R.CRIM.P. 31(a).  By contrast, a jury "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Id*. at 817.  "In the routine case, a general unanimity instruction will ensure that the jury is unanimous on the factual basis for a conviction, even where an indictment alleges numerous factual bases for criminal liability." *United States v. Holley*, 942 F.2d 916, 925–26 (5th Cir. 1991) (quoting *United States v. Beros*, 833 F.2d 455, 460 (3d Cir. 1987)).

However, "an exception to the general rule arises when the 'differences between means become so important that they may not reasonably be viewed as alternatives to a common end, but must be treated as differentiating what the Constitution requires to be treated as separate offenses.'" *United States v. Sila*, 978 F.3d 264, 267 (5th Cir. 2020) (quoting *Schad v. Arizona*, 501 U.S. 624, 633 (1991)); *see also Holley*, 942 F.2d at 928–29 (finding that specificity unanimity instruction was required where one count alleged multiple offenses).  In other words, where the exception applies, a general unanimity instruction is insufficient "because there exists a genuine risk that the jury is confused or that a conviction may occur as the result of different jurors concluding that a defendant committed different acts." *Sila*, 978 F.2d at 267–68 (internal quotations omitted).

Thus, in resolving whether a specific unanimity instruction was required for Count Three, the Court must determine whether (1) the particular statements, omissions, or other corrupt acts alleged in the Indictment under Count Three were elements of the charged offense and, relatedly, (2) whether Count Three embraces two or more separate offenses such that there was a substantial risk of jury confusion.  If the particular statements, omissions or other corrupt acts alleged in the Indictment are simply means to one offense, then the Court's general unanimity instruction was sufficient. *See Richardson*, 526 U.S. at 817.  However, if Count Three of the Indictment embraces separate offenses or the particular statements, omissions or other corrupt acts alleged in the Indictment are elements of Count Three, then a specific unanimity instruction was required. *See Sila*, 978 F.3d at 267. [2]

## A. Whether a Corruptly Made False or Misleading Statement, Omission, or Other Act Is an Element of Count Three

Jindal asserts that "a corruptly made false or misleading statement, omission, or other act is a necessary element to Count Three" (Dkt. #137 at p. 20).  However, Jindal does not press this argument—and for good reason.  In determining the difference between elements and means, the Court finds *Richardson* instructive. 526 U.S. at 817.  In *Richardson*, the Supreme Court explained the difference between elements and means, noting the "consequence [] matters" because a jury "cannot convict unless it unanimously finds that the Government has proved each element." *Id*. By way of example, the Supreme Court envisioned a statute "that makes it a crime (1) to take (2) from a person (3) through force or the threat of force (4) property (5) belonging to a bank." *Id.*

---

[2] As the Fifth Circuit has noted, unanimity is closely related to the issue of duplicity, though there are some distinctions—namely that the issues are evaluated at different procedural stages of the criminal proceedings. *United States v. Correa-Ventura*, 6 F.3d 1070, 1081 (5th Cir. 1993).  Further, the Fifth Circuit has found "the cases involving duplicity to be somewhat instructive for determining whether factual concurrence is required in a given case." *Id*. at 1082.

The Supreme Court explained that each numbered prerequisite is an element—something the Government must prove to secure a conviction. *Id.*

By contrast, means, are different ways a defendant can satisfy an element. *See id.*  For example, according to the Supreme Court, a defendant could meet the hypothetical statute's third element—force or threat of force—by using a knife or a gun. *Id.*  However, the Government does not need to prove the particular means the defendant used to commit an element of the crime. *Id.* Indeed, as long as each juror agreed that the defendant used "force or the threat of force," a disagreement about the means—whether the defendant used a knife or gun—would not matter. *Id.*; *see also Schad*, 501 U.S. at 631 ("We have never suggested that in returning general verdicts in such cases the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone.").

In the instant case, Jindal was charged under Count Three with "corruptly endeavor[ing] to influence, obstruct, and impede" the FTC's investigation in violation of 18 U.S.C. § 1505 (Dkt. #21 at p. 13).  Section 1505, provides in relevant part:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States . . . [s]hall be fined under this title, imprisoned not more than 5 years or . . . both.

18 U.S.C. § 1505.

Here, after examining § 1505, the Court finds that, contrary to Jindal's argument, a corruptly made false or misleading statement, omission, or act is not an element of the statute. Indeed, the statute and the Indictment make this plainly clear.  First, nothing in the text of § 1505 indicates that the acts taken to "endeavor to influence, obstruct, or impede" a pending proceeding are themselves elements. *See* 18 U.S.C. § 1505.  Rather, as the Fifth Circuit has explained, "the

key words in the statute are 'corruptly' and 'endeavors.'" *United States v. Cioffi*, 493 F.2d 1111, 1118–19 (5th Cir. 1974) (interpreting § 1503[3]).

Consequently, "[t]he endeavor, whether successful or not, is the gist of the offense." *Id.*; *see also United States v. Cisneros*, 26 F. Supp. 2d 24, 38–39 (D.D.C. 1998) ("The statutory purpose of § 1505 is to prevent any endeavor, whether successful or not, which is made for the purpose of corruptly influencing, obstructing or impeding an agency proceeding or congressional inquiry.") (internal quotation marks omitted).  Thus, "it is not the means employed by the defendant that are specifically prohibited by the statute; instead, it is the defendant's corrupt endeavor which motivated the action." *United States v. Cueto*, 151 F.3d 620, 631 (7th Cir. 1998) (interpreting § 1503).  In other words, "[t]he proper inquiry is whether a defendant had the requisite corrupt intent to improperly influence the investigation, not on the means the defendant employed in bringing to bear this influence." *United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir. 1989).

Accordingly, the most natural reading of the statute and case law make clear that a specific act taken by a defendant in his or her "corrupt" "endeavor" to obstruct a pending proceeding is not a required *element* under § 1505.  Rather, the specific acts taken by a defendant are merely examples of the *means* a defendant uses to commit an element of the crime. *See United States v. Adams*, No. 14-CR-44, 2015 WL 8966922, at *12–14 (D.D.C. Dec. 15, 2015) (concluding that defendant was not entitled to unanimity instruction on the particular acts he employed to obstruct or impede the internal revenue laws because the acts were means to his crime); *United States v.*

---

[3] Section 1505 provides, in relevant part:

> Whoever . . . corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).

18 U.S.C. § 1503.  Courts have held that "[s]ection 1505 is similar in language to 18 U.S.C. § 1503" and "cases interpreting section 1503 are relevant to constructions of section 1505." *United States v. Laurins*, 857 F.2d 529, 536 (9th Cir. 1988); *see also United States v. Browning, Inc.*, 572 F.2d 720, 723, 725 (10th Cir. 1978).

*Barfield*, 999 F.2d 1520, 1523 (11th Cir. 1993) ("The 'endeavor' component of the offense 'describes any effort or assay' to obstruct justice."); *United States v. Brand*, 775 F.2d 1460, 1465 (11th Cir.1985) ("The term 'corruptly' is the specific intent of the crime . . . ."); *see also Schad*, 501 U.S. at 632 ("The jury need not agree as to mere means of satisfying the *actus reus* element of an offense.").

Second, the Indictment makes clear that the specific acts Jindal undertook is his endeavor to obstruct the FTC investigation are not elements of the crime, but "example[s]" of the "means." Indeed, though Jindal now argues otherwise, the Indictment specifically alleged that Jindal violated § 1505 by several different "means," and then listed "example[s]" of these means (Dkt. #21 ¶¶ 22–23). Thus, a conclusion that a false or misleading statement, omission, or act is a necessary element to Count Three would ignore the Indictment's express language. *See United States v. Sorensen*, 801 F.3d 1217, 1237 (10th Cir. 2015) (finding that the district court erred in giving a specific unanimity instruction on a listed means in the indictment because, in part, the district court ignored the indictment's language). Moreover, the Supreme Court has expressly gone out of its way to avoid any suggestion "that the Government adds an element to a crime . . . when the indictment charges different means of committing a crime in the conjunctive." *Musacchio v. United States*, 577 U.S. 237, 244 n.2 (2016). Thus, the Court finds Jindal's argument that a unanimity instruction was required because "a corruptly made false or misleading statement, omission, or other act is a necessary element to Count Three" unavailing (*see* Dkt. #137 at p. 20).

The Court turns to consider whether Count Three of the Indictment alleged multiple offenses—a situation which could warrant a specific unanimity instruction. *See Sila*, 978 F.3d at 269 (distinguishing the case at hand from *Holley* because "[u]nlike the indictment in *Holley*, Count [One] of [defendant]'s indictment does not allege 'multiple' offenses or 'embrace[ ] two or more

separate offenses, though each be a violation of the same statute.'") (citing *Holley*, 942 F.2d. at 927).

### B. Whether Count Three Alleged Multiple Offenses or Embraced Two or More Separate Offenses

Jindal contends that many of the cases where courts have found a specific unanimity instruction to be necessary have involved situations where a single indictment contained multiple instances of an alleged offense—"cases similar to the one at hand" (Dkt. #137 at pp. 17–18). More specifically, Jindal points to perjury and false statement cases, asserting they are "especially apt in this case [since] the gravamen of the obstruction count against Mr. Jindal is his allegedly false testimony provided under oath to the FTC, and such testimony could just as easily form the basis of perjury rather than obstruction charge" (Dkt. #137 at p. 18 n.2). In response, the Government asserts that Count Three of the Indictment charged Jindal with a "single and continuing scheme to obstruct a single proceeding over a specified time period" (Dkt. #138 at p. 13). Further, the Government rejects Jindal's comparison of § 1505 to perjury, stating that "[u]nlike perjury, where a defendant is charged for a specific false statement under oath, the obstruction offense at issue here, 18 U.S.C. § 1505, prohibits ongoing endeavors to impede an investigation pending before an agency of the United States" (Dkt. #138 at p. 13).

In determining whether Count Three of the Indictment alleged multiple instances of the alleged offense, the Court finds several cases helpful. For example, in *Schad*, a defendant was convicted of first-degree murder, but argued his conviction was unconstitutional because the jury was not required to agree on whether he committed premeditated or felony murder. 501 U.S. at 630. The Supreme Court rejected this position, holding that premeditated murder and felony murder are simply alternative means of satisfying the *mens rea* element of the single crime of first-degree murder. *Id.* at 642. In doing so, the Supreme Court reiterated that "there is no general

14

requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id*. at 632 (internal quotations and citations omitted).

In contrast to *Schad*, the Fifth Circuit in *Holley* found that several counts of the indictment at issue alleged multiple offenses and, thus, a specific unanimity instruction was required. *Holley*, 942 F.2d at 929. The Court began by distinguishing *Schad*, noting that it involved a single killing of one individual—"a *single* crime." *Id.* at 927 (citing *Schad*, 501 U.S. at 642) (emphasis added). By contrast, the Court found that each count of the indictment at issue alleged multiple statements, each of which would have constituted a separate violation of the perjury statute.[4] *Id*. at 927–28. *Cf. Bins v. United States*, 331 F.2d 390, 393 (5th Cir. 1964) (noting that where false statements made on two separate loan applications, filing of each false document would constitute a separate crime). Thus, the Fifth Circuit in *Holley* found it significant that the indictment at hand alleged distinct instances of the same crime which could have resulted in potentially multiple convictions, whereas the indictment in *Schad* involved alternative statutory means for committing one offense. *Holley*, 942 F.2d at 927. Accordingly, the Fifth Circuit held that because the counts alleging multiple instances of perjury were in fact, separate offenses, the indictment was duplicitous. *Id.* at 928–29. Thus, to cure the duplicity, the Fifth Circuit held that the district court was required to give a specific unanimity instruction. *Id.* at 929.

---

[4] In *Holley*, the defendant was convicted on two counts of perjury in violation of 18 U.S.C. § 1623. Section 1623 provides, in relevant part, as follows:

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1623(a).

Distinguishing *Holley*, the Fifth Circuit more recently concluded that a specific unanimity instruction was not required to convict a defendant for bank fraud. *See United States v. Duruisseau*, 796 F. App'x 827, 837 (5th Cir. 2019) (unpub.).  There, the defendant claimed that an element of bank fraud was a materially false statement and therefore that the jury must unanimously agree as to which was particular statement was false. *Id*. at 837.  However, the Fifth Circuit rejected this argument, noting that it had previously found under the wire-fraud statute that "'there is no need to instruct a jury that it needs to be unanimous as to a particular false statement within a given wire' because that statute criminalizes 'not a particular false statement within a wire, but rather each particular wire that contained a false statement.'" *Id*. (quoting *United States v. Nanda*, 867 F.3d 522, 529 (5th Cir. 2017)).  Similarly, the Fifth Circuit found that bank fraud—like wire fraud—"criminalizes executing a fraudulent 'scheme or artifice' and does not separately criminalize each false statement used in furtherance thereof." *Id*.  Thus, the charges at issue were "distinguishable" from the perjury charges in *Holley*, which were "brought under a statute criminalizing *particular* false statements." *Id*. (citing *Holley*, 942 F.2d at 927) (emphasis added). Accordingly, whereas the indictment in *Holley* "alleged multiple theories of liability under a single count," count two of the indictment in *Duruisseau* alleged only one offense. *Id.* (citing *Holley*, 942 F.2d at 927).

Here, Count Three of the Indictment charged Jindal with an individual offense—not multiple instances of one.  To be sure, § 1505 contemplates a continuing course of conduct— during the pendency of an agency proceeding—designed to further the endeavor of "influenc[ing], obstruct[ing], and imped[ing]" the proceeding. *See* 18 U.S.C. § 1505; *Cf. United States v. Beradi*, 675 F.2d 894, 898–99 (7th Cir. 1992) (finding that the obstruction of justice statute under § 1503 contemplates a single continuing offense).

Moreover, Count Three of the Indictment makes it evident that Jindal was charged with a single offense.  To be sure, the Indictment did not charge separate obstruction offenses, but rather alleged single and continuing endeavor to obstruct the FTC investigation over a specified time period.  More specifically, Count Three alleged that "[f]rom in or around April 2017, and continuing at least through in or around October 2017," "Jindal corruptly endeavored to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had" (Dkt. #21 ¶ 22).  Further, Count Three expressly alleged that Jindal committed this single and ongoing offense by several different "means" (Dkt. #21 ¶ 22).  Thus, the acts listed in the Indictment were merely "example[s]" of Jindal's obstructive endeavor—not multiple instances of the crime.  Accordingly, because Count Three plainly sets forth a continuing scheme to obstruct a single proceeding over a specified time period—and not multiple offenses— a specific unanimity instruction was not required on this basis.

Further, as such, this is case is more analogous to *Duruisseau* and *Nanda*, where the Fifth Circuit found that no specific unanimity instruction was required as to the particular false statements made by the defendants, than *Holley*, where the Court found that one was necessary. In *Duruisseau*, the Fifth Circuit explained that the bank fraud statute at issue "criminalizes executing a fraudulent '*scheme* or artifice' and does not separately criminalize each false statement used in furtherance thereof." 796 F. App'x at 837 (emphasis added).  Thus, because the indictment at issue alleged only one offense, no unanimity instruction was required. *Id*. So too here.  Similar to the bank fraud statute in *Duruisseau*, § 1505 prohibits an *endeavor* to impede a pending investigation before an agency of the United States—not particular statements, acts, or omissions committed in furtherance of the endeavor.   Indeed, in short, Jindal's "argument reflects a misunderstanding of the law." *Nanda*, 867 F.3d at 529 (concluding that "[i]t is not a particular

false statement within a wire, but rather each particular wire that contained a false statement, that constitutes an individual offense for purposes of the wire fraud statute.").

For the same reasons, that is why, though Jindal argues otherwise, this case is not analogous to *Holley* or other perjury and false statement cases. As the Government points out in rejecting the comparison of the offenses, "whether or not Jindal's testimony might also have formed the basis of a perjury charge, Jindal was indicted and convicted for a different crime: endeavoring to obstruct a federal proceeding" (Dkt. #138 at p. 13). And, importantly, unlike perjury—where a defendant is charged for *specific* false statements under oath—Jindal was charged with a single, ongoing obstructive endeavor. To be sure, the "acts" listed in the Indictment were merely "example[s]" of Jindal's obstructive endeavor—not separate offenses. Accordingly, in sum, while perjury statutes criminalize particular false statements and defendants are charged accordingly, § 1505 prohibits ongoing endeavors to obstruct a federal proceeding and Jindal was charged in the Indictment accordingly. Thus, unlike the indictment in *Holley*, Count Three of Jindal's Indictment does not allege "multiple" offenses or "embrace[] two or more separate offenses, though each be a violation of the same statute." *See Holley*, 942 F.2d at 927.

Moreover, the only circuit court to specifically address § 1505 in this context is in accord—it has rejected the same arguments that Jindal now makes. *See United States v. Bayyouk*, 607 F. App'x 735, 736–37 (9th Cir. 2015) (unpub.). Like Jindal, the defendant in *Bayyouk* argued the district court should have instructed the jury that it must unanimously agree on which specific statement constituted obstruction. *Id.* However, the Ninth Circuit rejected the argument, finding that "[a]ny possibility of jury confusion was at best remote" because the defendant "was convicted of a single, straightforward count, on the basis of a single course of conduct spanning a short period of time." *Id.* at 736. The court further concluded that "[a]ny potential disagreements among the

18

jury members regarding the particular false statement . . . are merely differences of means, and therefore do not violate his right to a unanimous jury verdict." *Id*. at 737.

As well, the Tenth Circuit has noted that it "disapprove[s] of the instruction" Jindal contends was warranted. *See Sorensen*, 801 F.3d at 1237. In *Sorensen*, the Tenth Circuit found that the district court erred by requiring unanimity on the "means" a defendant endeavored to obstruct or impede the due administration of the Internal Revenue laws—though it was harmless. *Id.* Indeed, the court found that the instruction "carried no cited support for its legal rule" and "ignored the indictment's language [] that [defendant] violated § 7212(a) 'by the following means, *among others* . . . .'" *Id*. (emphasis in original).

In a last-ditch effort to overcome this case law, Jindal makes two final arguments.  First, Jindal asserts that the Court's refusal to give a specific unanimity instruction was "exacerbated" by the fact that the Government "alleged and characterized multiple statements and/or omissions by [] Jindal as 'false,' 'misleading,' and 'obstructive' despite such statements and/or omissions not being included as a basis for Count Three of the Indictment" (Dkt. #137 at p. 19).  Thus, in short, Jindal argues that Count Three should be reversed because the Indictment was constructively amended at trial (Dkt. #137 at p. 20).  Second, Jindal argues that the Government's aiding and abetting theory on Count Three sets this case apart from the cases in which courts have held that unanimity instructions were not necessary (Dkt. #141 at p. 3).  Indeed, Jindal acknowledges that the Government's response includes cases in which courts have held that unanimity instructions were not necessary, yet he argues that "no such case involves a single count that charged the defendant with violating two separate statutes" (Dkt. #141 at p. 3).  The Court turns to examine whether these arguments have merit, beginning with Jindal's constructive amendment argument.

### a.   Whether the Indictment Was Constructively Amended at Trial

The Fifth Amendment "guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment." *United States v. Threadgill*, 172 F.3d 357, 370 (5th Cir. 1999) (internal quotation marks omitted).   From this guarantee arises the doctrine of constructive amendment, which provides that "[a]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *United States v. Griffin*, 800 F.3d 198, 202 (5th Cir. 2015) (internal quotations omitted).   The Fifth Circuit has held that a constructive amendment occurs when the court "permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged" or upon "a materially different theory or set of facts than that which [the defendant] was charged." *United States v. McMillan*, 600 F.3d 434, 451 (5th Cir. 2010) (quoting *United States v. Hoover*, 467 F.3d 496, 500–01 (5th Cir. 2006)).

However, contrary to Defendant's suggestion otherwise, the Indictment was not constructively amended at trial.   Indeed, "[n]o constructive amendment arises where the evidence proves facts different from those alleged in the indictment, but does not modify an essential element of the charged offense." *United States v. Petersen*, 383 F. App'x 458, 461 (5th Cir. 2010). Here, as stated *ad nauseum*, the alleged statements, omissions, and acts alleged by the Government in the Indictment were not elements to Count Three, but as the Indictment makes clear, "example[s]" of the means by which Jindal violated § 1505.   Thus, there could be no constructive amendment through the Government's characterization of several statements and/or omissions by Jindal as "false," "misleading," or "obstructive" despite such statement not being included in the Indictment.

20

To be sure, this is not "a case where the indictment charged commission of an offense in one specific manner but the district court permitted a conviction based on another, entirely different manner." *McMillan*, 600 F.3d at 451.  Rather, the Indictment here specifically charged Jindal with "corruptly endeavor[ing] to influence, obstruct, and impede" a federal proceeding from April 2017 to October 2017 (Dkt. #21 ¶ 22).  And the statements and/or omissions made by Jindal alleged by the Government that he now takes issue with were probative of Jindal's endeavor to obstruct the FTC investigation. *See United States v. Gates*, 624 F. App'x. 893, 896–97 (5th Cir. 2015) (finding that though Government presented evidence of a fraudulent misrepresentation different from that charged in the indictment, the indictment was not constructively amended because the evidence was "probative of the [defendants'] fraudulent scheme"); *McMillan*, 600 F.3d at 451 (rejecting defendants' argument that the admission of evidence related to an uncharged misrepresentation allowed the jury to convict based on this uncharged factual basis when the admitted evidence was probative of the charged fraud); *see also United States v. Thompson*, 647 F.3d 180, 185 (5th Cir. 2011) (rejecting a constructive amendment argument where the Government's evidence of an uncharged Hobbs act violation "did not amend or alter the indictment, but rather 'explained the allegations of the indictment'").

Thus, with this issue resolved, the Court turns to Jindal's final argument as to why a specific unanimity instruction was required.

### b. Whether the Government's Aiding and Abetting Theory Necessitated a Specific Unanimity Instruction for Count Three

As noted, as an alternative means of violating 18 U.S.C. § 1505, Count Three charged Jindal with aiding and abetting another individual, specifically Rodgers, in his obstruction of the FTC investigation—thus violating § 1505 though § 2 (Dkt. #21 at p. 14).  Jindal, therefore, argues that the Government's aiding and abetting theory of Count Three "present[ed] a different set of

elements to the jury on the same count" (Dkt. #141 at p. 2).  Accordingly, Jindal contends that because Count Three charged him with violating two separate statutes—18 U.S.C. § 1505 and § 2—it was necessary to require the jury to "at least [] [be] unanimous as to which statute or theory formed the basis for their conviction on Count Three" (Dkt. #141 at p. 2).

However, Jindal's argument is misplaced.  Aiding and abetting under 18 U.S.C. § 2 is "not itself a crime," but rather a means or different theory of liability of committing a single crime. *United States v. Cabello*, 33 F.4th 281, 286 (5th Cir. 2022); *see also* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."); *United States v. Pearson*, 667 F.2d 12, 13 (5th Cir. Unit B 1982) (per curiam) ("[A]iding and abetting is not a separate crime with elements of its own.").  Indeed, the Fifth Circuit has held that aiding and abetting is embedded in every indictment for a substantive crime. *United States v. Neal*, 951 F.2d 630, 633 (5th Cir. 1992) ("Aiding and abetting is not a separate offense, but it is an alternative charge in every indictment, whether explicit or implicit.").  Thus, it follows that aiding and abetting is a different means of committing a single crime—not a separate offense itself—because otherwise it could not be implicit in a substantive charge.  Accordingly, because aiding and abetting is not a separate and distinct offense from the underlying substantive crime—but instead a different theory of liability for the same offense—no specific unanimity instruction was required. *See Schad*, 501 U.S. at 630 (holding that premeditated murder and felony murder are simply different theories of liability for the single offense of first-degree murder and therefore no specific unanimity instruction was required).

Further, without squarely deciding the issue, the Fifth Circuit has signaled its endorsement of this view. *See United States v. Williams*, 449 F.3d 635, 647 (5th Cir. 2006).  In *Williams*, the Fifth Circuit explained:

> Under the general aiding and abetting statute, a person who aids and abets the commission of an offense is treated the same as a principal actor . . . . Cabining the defendant's role into a particular box is unnecessary.  In fact, the jury will seldom be asked to make an independent determination of whether the defendant committed the offense as a principal or as an aider and abettor.  Both are sufficient for conviction; both are treated the same for punishment.

*Id.*  Thus, the Court finds that the Government's aiding and abetting theory did not necessitate a specific unanimity instruction for Count Three.

Moreover, other courts have likewise rejected unanimity arguments based on aiding and abetting liability.  *See United States v. Osorio*, 757 F. App'x 167, 171 (3d Cir. 2018) (finding that district court did not need to instruct the jury that it must unanimously agree on the theory of liability, i.e., principal or accomplice); *United States v. VanderZwaag*, 467 F. App'x 402, 408 (6th Cir. 2012) ("This court has specifically held that district courts are not required to give a special unanimity instruction for aiding and abetting charges.") (internal citations and quotations omitted); *United States v. Ferguson*, 676 F.3d 260, 279 (2d Cir. 2011) ("[A] jury is unanimous even if some jurors convicted on a theory of principal liability and others on aiding and abetting."); *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("Aiding and abetting is not a separate and distinct offense from the underlying substantive crime, but is a different theory of liability for the same offense. . . . For this reason, the district court [was not] obliged to give a specific unanimity instruction.").

Accordingly, for all these reasons, the Court finds that it was not obliged to give a specific unanimity instruction on Count Three.  Thus, the Court finds no basis for upsetting the verdict under the standards of Rule 29 or Rule 33. The Court turns to Jindal's next argument—that the

Government failed to prove the "obstructive" acts alleged in the Indictment (*see* Dkt. #137 at p. 20).

## II.     Whether There Is Sufficient Evidence to Support the Guilty Verdict as to Count Three

Next, Jindal argues that "though the [G]overnment alleged dozens of 'obstructive' acts, statements, and omissions to the FTC throughout [its] Indictment and case against [] Jindal," the Government "failed to produce sufficient evidence to support such allegations" (Dkt. #137 at p. 20).  In response, the Government asserts that the "jury was presented with a mountain of evidence that Jindal engaged in an endeavor to obstruct the FTC investigation" (Dkt. #138 at p. 14).  And "if it were even required—there was sufficient evidence as to each example of the means by which he did so" (Dkt. #138 at p. 14).

"Sufficiency review essentially addresses whether 'the government's case was so lacking that it should not have even been submitted to the jury.'" *Musacchio*, 577 U.S. at 243 (quoting *Burks v. United States*, 437 U.S. 1, 16 (1978)).  Thus, a reviewing court considers "only the 'legal' question 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  This "limited review does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id*. (quoting *Jackson*, 443 U.S. at 319).

Here, the Court finds that the evidence was sufficient to convict Jindal for Count Three.  Count Three alleged Jindal violated § 1505 "in or around April 2017" through "October 2017"  by "corruptly . . . endeavor[ing] to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of

the United States . . . ." (Dkt. #21 ¶ 22).   Thus, to sustain a conviction under § 1505, the Government was required to prove that Jindal "knew that a proceeding was pending before a federal agency and that he corruptly endeavored to influence, obstruct, or impede the due and proper administration of the law under which the proceeding was being conducted." *United States v. Linares*, 691 F. App'x 196, 198 (5th Cir. 2017) (unpub.).   The Government did just this.

First, the Court took judicial notice that the FTC's investigation was a proceeding pending before an agency of the United States (Dkt. #130 at pp. 166–67).   Second, the Government presented evidence that Jindal knew of the FTC investigation (Dkt. #142, Exhibit 1 at p. 16). Third, the Government presented ample evidence that Jindal corruptly endeavored to obstruct the FTC proceeding.

For example, the evidence established that in response to requests for voluntary information from the FTC, Jindal sent false and misleading communications in an effort to conceal the truth from the FTC.   As one example, on April 28, 2017, Jindal listed in an email to the FTC three owners he reached out to, yet, notably, he omitted one name—Foreman—owner of Foreman Therapy Services—the only owner who responded positively to Jindal's text message (Dkt. #142, Exhibit 6).   As well, on the same day, in another response to a request for information, Jindal emailed the FTC a typewritten list of competitors that did not include YTS or Foreman (Dkt. #142, Exhibit 9 at p. 6).   Later, after the FTC served Integrity with a Civil Investigative Demand, Jindal produced a handwritten list of competitors that listed the companies in the same order as the typewritten list—indicating that the typewritten list was based on the handwritten list (Dkt. #142, Exhibit 9 at pp. 6–7).   Yet, the handwritten list, which the typewritten list was based on, included both YTS and Foreman (Dkt. #142, Exhibit 9 at p. 7).

25

The evidence also showed that Jindal emailed the FTC, stating: "I decided to administer rate cuts to some of my therapists based on a collective agreement with my office team," (Dkt. #142, Exhibit 6), and "I will give you any info you need to prove that nothing at all is done collectively with any counterparts" (Dkt. #142, Exhibit 8).  Significantly, the words "collectively" and "counterparts" appeared in the messages Jindal sent to his competitors seeking their agreement to lower pay rates (Dkt. #142, Exhibit 1 at pp. 9–13).  Thus, there was ample evidence that, as part of a corrupt endeavor to obstruct the FTC's investigation, Jindal made false and misleading statements seeking to conceal and obscure the truth.

Further, the Government introduced evidence that on September 15, 2017, Jindal made several false and misleading statements to the FTC during his investigational hearing (Dkt. #142, Exhibit 49; Dkt. 142, Exhibit 50).  For instance, the FTC asked Jindal why he texted Le that "YTS was on board," and Jindal replied, "I don't, you know, no reason why I put that. I have no idea what YTS is doing" (Dkt. #142, Exhibit 49 at p. 35).  However, the evidence at trial showed this response was misleading as Jindal failed to inform the FTC about Rodgers' messages with the owner of YTS.  Further, Jindal testified at the FTC hearing that when he sent the text messages to his competitors, his intent was only to find out what his competitors were paying their workers (Dkt. #142, Exhibit 49 at p. 34).  Yet, Grimmett testified at trial that she had given Jindal her pay rates a few months prior after the pair had discussions about an acquisition. And when asked whether he had information on Grimmett's rates because he previously attempted to acquire her company, Jindal testified "No, we didn't go down that far on the rates when I was trying to acquire her" (Dkt. #142, Exhibit 49 at p. 56).

Notwithstanding all this evidence, Jindal argues that there is insufficient evidence as to particular examples of the means in the Indictment by which he obstructed the FTC investigation.

But this argument is misplaced.  Rather, "[t]he jury's verdict will be affirmed unless no rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt." *United States v. Roetcisoender*, 792 F.3d 547, 550 (5th Cir. 2015).  In other words, "the Government need not prove all facts charged in the indictment as long as it proves other facts charged in the indictment which do satisfy the essential elements of the crime." *United States v. England*, 480 F.2d 1266, 1269 (5th Cir. 1973).  Likewise, the Government does not "add[] an element to a crime for purposes of sufficiency review when the indictment charges different means of committing a crime in the conjunctive." *Musacchio*, 577 U.S. at 244 n.2.  Thus, the evidence in this case was sufficient. Indeed, the jury was presented a mountain of evidence that Jindal engaged in an endeavor to obstruct the FTC investigation.

In sum, Jindal's attempt to attack the sufficiency of the evidence with respect to Count Three is without merit.  Based on the evidence presented, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. Accordingly, Jindal is not entitled to a judgment of acquittal based on insufficient evidence. Moreover, given this evidence, the Court cannot say that "it would be a miscarriage of justice to let the verdict stand." *Robertson,* 110 F.3d at 1118. Thus, Jindal is not entitled to a new trial.

## CONCLUSION

It is therefore **ORDERED** that Defendant Neeraj Jindal's Motion for Judgment of Acquittal or for New Trial (Dkt. #137) is hereby **DENIED.**

**IT IS SO ORDERED.**
**SIGNED this 11th day of August, 2022.**


AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE